PEOPLE v TAYLOR

1. APPEAL AND ERROR—INSTRUCTIONS TO JURY.

   Claims of instructional error are considered by an appellate court
       in the context of the jury charge read as a whole.

2. CRIMINAL LAW—EVIDENCE—INSTRUCTIONS TO JURY.

   Instructing the jury that defendant had not chosen to present any
       evidence when, in fact, defendant had testified in his own
       behalf, did not constitute reversible error where the charge,
       apart from that error, was fair and accurate, the jurors were
       experienced and heard the defendant's testimony on the same
       morning that the charge was given, and the judge later stated
       that defendant had chosen to testify and that there was testi-
       mony that defendant's accomplice had snatched complainant's
       purse.

3. ROBBERY—AIDING AND ABETTING—INSTRUCTIONS TO JURY.

   Instructing the jury that it could convict defendant if it found
       that he had aided and abetted his codefendant in the theft of
       complainant's purse did not deprive defendant, who did not
       object, of notice of the charge against him which he was
       required to defend himself, since the aiding and abetting stat-
       ute expressly abolishes the distinction between principal and
       accessory, and provides that an accessory to the commission of
       an offense may be prosecuted, indicted, tried and, on conviction,
       shall be punished as if he had directly committed the offense
       (MCLA 767.39).

4. CRIMINAL LAW—LESSER INCLUDED OFFENSES—AFFIRMATIVE EXCLU-
       SION—INSTRUCTIONS TO JURY.

   Instructing the jury that there was no evidentiary dispute, as

REFERENCES FOR POINTS IN HEADNOTES

[1] 53 Am Jur, Trial §§ 554, 844.
[2] 53 Am Jur, Trial § 670.
[3] 53 Am Jur, Trial § 647.
[4] 53 Am Jur, Trial §§ 286, 796–802.
[5] 53 Am Jur, Trial §§ 485, 486, 597.
[6] 29 Am Jur 2d, Evidence § 638 *et seq.*
[7] 47 Am Jur 2d, Juvenile Courts and Delinquent and Dependent
       Children §§ 4, 8.

prosecutor and defense counsel had agreed in their arguments, that an unarmed robbery had been committed and that the critical issue was whether defendant had participated in the offense did not affirmatively exclude lesser offenses from the jury's consideration.

5. CRIMINAL LAW—TRIAL—PROSECUTOR'S ARGUMENTS.

A prosecutor is not vouching for a defendant's guilt where he seeks to persuade the jury that the conclusion that defendant is guilty flows from the evidence.

6. CRIMINAL LAW—DEFENDANT TESTIFYING—SILENCE—IMPEACHMENT.

Cross-examination of a defendant as to whether he had been interrogated or had made a statement, shortly after his arrest, inconsistent with the exculpatory statement he made some 11 hours later, was not an attempt by the prosecutor to impeach defendant by showing his silence at the time of his arrest where defendant's exculpatory statement was introduced into evidence to corroborate his own testimony, the prosecutor was attempting to elicit from defendant a prior statement inconsistent with his trial testimony, and upon defendant's denying making any other statement, the point was not belabored, and where there is nothing in the record to indicate, nor is it claimed, that the prosecutor knew that no such statement had been made.

7. CRIMINAL LAW—SENTENCING—JUVENILE RECORD.

A defendant is not entitled to be resentenced because of the use of his juvenile record in the presentence report.

Appeal from Recorder's Court of Detroit, Geraldine Bledsoe Ford, J. Submitted Division 1 October 10, 1972, at Detroit. (Docket No. 11853.) Decided February 20, 1973. Leave to appeal applied for.

Roy Taylor was convicted of unarmed robbery. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Luvenia D.*

*Dockett,* Assistant Prosecuting Attorney, for the people.

*David A. Goldstein,* Assistant State Appellate Defender, for defendant.

Before: V. J. Bʀᴇɴɴᴀɴ, P. J., and Lᴇᴠɪɴ and O'Hᴀʀᴀ,* JJ.

Lᴇᴠɪɴ, J. The defendant, Roy Taylor, was convicted by a jury of unarmed robbery. We affirm.

Irene Ryan's purse was stolen in the early morning hours as she stood at a Detroit street corner awaiting a taxi. Two men approached her. When she refused to give up the purse, she was dragged into a nearby alley and the purse was torn from her grasp.

It is undisputed that the two men were defendant Taylor and his nephew, Moses Washington. Each of the men placed the entire blame for stealing the purse on the other. Irene Ryan, though unable to identify Taylor or Washington, said that the shorter and older of the two men had taken her purse. Taylor was shorter and older than Washington.

Taylor raises several issues concerning the charge to the jury. The first is whether the judge committed reversible error when she stated that Taylor had not chosen to present any evidence. That statement was incorrect; Taylor had in fact testified in his own behalf, and there had been introduced into evidence an exculpatory statement Taylor had given the police after his arrest.

The portion of the judge's charge complained of

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

is quoted in the margin.[1] We consider claims of instructional error in the context of the charge read as a whole. Later in her charge the judge mentioned that "Mr. Taylor has chosen here to testify", and that "here there is testimony that Mr. Washington is the person who committed the offense".

The charge, apart from this error, was fair and accurate. The error could have been quickly and simply remedied if the defendant's lawyer had noted the error and brought it to the judge's attention. The jurors were experienced and had heard Taylor's testimony on the same morning that the charge was given. Under the circumstances we do not believe that the judge misled the jury.[2]

Taylor also argues that the judge deprived him of notice of the charge against which he was required to defend himself when she charged the jurors that they could convict him if they found he had aided and abetted Washington in the theft. The distinction between principal and accessory has, however, been abolished by statute; the statute expressly provides that one who aids or abets

---

[1] "The defendant, of course, may rely upon cross-examination brought out from the people's witnesses and, of course, upon any evidence which he wishes to submit himself. The defendant never has a duty to present any evidence at all on his own behalf. But he may present that evidence if he chooses to do so. *And the defendant here did not choose to present evidence to you for your consideration.* Now, a reasonable doubt exists in any case when after careful and impartial consideration of all of the evidence, you as jurors do not feel convinced to a moral certainty of the guilt of the defendant." (Emphasis supplied.)

[2] The judge also mentioned that the people had offered exhibits and omitted to mention defendant's exhibit—the exculpatory statement he had given to the police. The judge then informed the jury that "those exhibits may be made available to you in the jury room." Taylor alleges that this was prejudicial error. Again there was no objection. The record does not show whether any exhibit was actually taken into the jury deliberation room, and, if so, whether the exculpatory statement was among the exhibits taken into the room.

—an accessory—the commission of an offense may be "prosecuted, *indicted, tried* and on conviction shall be punished *as if* he had directly committed such offense". (Emphasis supplied.)[3] Moreover, no objection to the charge as given was voiced at the time of trial.

Taylor next raises a *Lemmons* issue.[4] In her charge, the judge stated:

"And as counsel on both sides have said to you, there is no dispute, there is no evidentiary dispute, about the fact that the offense of robbery unarmed was committed. The critical issue here is as to whether Mr. Taylor, the defendant, was a part of that transaction."

Taylor argues that the judge, by her statement, "affirmatively excluded" the jury from considering lesser included offenses, and that, under *Lemmons,* his conviction must be reversed.

Both lawyers had argued that the issue before the jury was whether the defendant Taylor was the man who stole the purse. Taylor's lawyer did not question the people's evidence establishing the commission by someone of an unarmed robbery. Further, Taylor might not have been entitled to an instruction on a lesser offense if such an instruction had been requested.[5]

While the practical effect of the judge's statement in this case may be no different than the practical effect of the *Lemmons* statement, we have declined to extend the *Lemmons* rule beyond the case where the judge says there are no in-

---

[3] MCLA 767.39; MSA 28.979. See *People v Palmer,* 42 Mich App 549 (1972).

[4] *People v Lemmons,* 384 Mich 1 (1970).

[5] There was no affirmative evidence from which the jury could have concluded that the use of force had not been established. They could only have so concluded by disbelieving Mrs. Ryan's testimony. Taylor testified that he was fleeing the scene as Washington stole the purse and did not observe the actual purse snatching. See *People v Gregory Thomas,* 38 Mich App 777, 781 (1972).

cluded offenses.[6] While the judge in this case noted the apparent agreement that an unarmed robbery had occurred, she did not tell the jurors, as did the *Lemmons* judge, that there were no included offenses, or that they might not return a verdict on a lesser included offense.

Taylor next urges that his conviction should be reversed because the prosecutor, in his argument to the jury, offered his opinion of Taylor's guilt. We have reviewed the argument, and are persuaded that the prosecutor was not himself vouching for Taylor's guilt, but rather he was seeking to persuade the jurors that the conclusion that Taylor was guilty flowed from the evidence.[7]

Taylor contends that it was reversible error for the prosecutor to seek to impeach Taylor by showing his silence at the time of his arrest. Taylor was arrested at about 1 a.m. He gave police an exculpatory statement some 11 hours later. The judge allowed Taylor to introduce this statement in evidence on the theory that it corroborated Taylor's testimony at trial.

The questioning of which Taylor complains was directed to the interval between the arrest and the giving of the statement. The prosecutor on cross-examination and again on re-cross-examination

---

[6] See *People v Gregory Thomas, supra,* p 782. Recently, in *People v Herbert Van Smith, Jr.* 388 Mich 457, 462 (1972), two Justices argued that: "When the evidence would support a conviction on lesser included offenses the court's failure to instruct thereon can neither be excused nor waived by the parties". This view has yet to command the votes of a majority of the Justices in any case.

[7] The prosecutor, after arguing at length that Taylor's exculpatory testimony was inconsistent with the victim's testimony, said:

"He was there. He threw the purse away. He is responsible for the commission of a robbery not armed that occurred October 19th, 1970, in the City of Detroit, on Harper and Van Dyke. I submit there should be no question in your mind, no reasonable doubt that he committed this crime on his own or aided and abetted in the commission with Moses Washington. I submit to you the former is what happened. But the latter is also existent."

asked Taylor if he had not been questioned or made a statement in the early morning hours, shortly after his arrest, inconsistent with the statement he had given the police introduced in evidence. Taylor denied having made any statement other than the one which was introduced.[8]

We do not perceive the prosecutor's questions as attempts to use Taylor's silence as evidence of his guilt. We view them rather as attempts to elicit from Taylor a prior statement inconsistent with his testimony at trial. *Cf. People v Graham*, 386 Mich 452, 458 (1971). The point was not belabored. There is nothing on this record to indicate—nor indeed is it claimed—that the prosecutor knew that no such statement had been made.

Finally, Taylor contends that he should be re-sentenced because the presentence report which the judge had before her contained a reference to Taylor's juvenile record. This Court has divided on the propriety of the sentencing judge considering a defendant's juvenile record.[9] It would serve no

---

[8] The questioning on re-cross was as follows:

*"(By Mr. Monash) [the prosecutor]:*

*"Q.* Now, just to ask you once again, sir, in connection with what Mr. Crockett just asked you, were you taken upstairs at 2:15 a.m. the morning of the incident, at 2:15 a.m.?

*"A.* [Taylor] I was taken to the Fifteenth Precinct on Conner and Gratiot.

*"Q.* And were you advised of your constitutional rights at that time?

*"A.* Yes, I was.

*"Q.* Did you tell the police anything about the incident?

*"A.* No, I didn't.

*"Q.* Did you tell the police you saw no crime take place; you were walking down the street and were arrested?

*"A.* I did not make a statement, period.

*"Q.* You made no statement at all?

*"A.* No.

*"Mr. Monash:* That's all I have." (Emphasis supplied.)

[9] Compare *People v Coleman*, 19 Mich App 250, 255 (1969), with *People v McFarlin*, 41 Mich App 116 (1972), *leave granted*, 388 Mich 761 (1972).

purpose to rehash here what only the Supreme Court can resolve. It will suffice to say that this panel adheres to the view expressed in *People v Coleman,* 19 Mich App 250, 255 (1969), permitting consideration of the juvenile record.

Affirmed.

All concurred.

Rehearing denied April 9, 1973

### On Application for Rehearing

Defendant Taylor applies for a rehearing reiterating his claim that the prosecutor, in cross-examining Taylor at trial, sought improperly to bring out that Taylor had declined to make any statement to police immediately after he was arrested. In our original opinion above we said:

"We do not perceive the prosecutor's questions as attempts to use Taylor's silence as evidence of his guilt. We view them rather as attempts to elicit from Taylor a prior statement inconsistent with his testimony at trial. *Cf. People v Graham,* 386 Mich 452, 458 (1971). The point was not belabored. There is nothing on this record to indicate—nor indeed is it claimed—that the prosecutor knew that no such statement had been made."

Taylor, on application for rehearing, for the first time raises the contention that the prosecutor was aware that no such inconsistent statement had been given before he questioned Taylor, and we are now directed to testimony of a police officer which supports this contention.

We have again reviewed the testimony in question. We remain unconvinced that the prosecutor sought by his questions to raise Taylor's silence in the face of his accusers as evidence against him. The prosecutor did not persist in his questions

after Taylor denied having made an inconsistent statement, and the prosecutor did not in his arguments to the jury refer in any way to Taylor's silence.

When it affirmatively appears that a prosecutor has consciously and deliberately sought to introduce improper and prejudicial evidence against a defendant, reversal may indeed be required. See *People v Robinson,* 386 Mich 551, 563 (1972). Where the record does not clearly support such a conclusion, however, but is ambiguous, as is the record here, the defendant must establish his claim by, for example, a motion for new trial supplementing and clarifying the record. *Cf. People v Jelks,* 33 Mich App 425, 431 (1971). This Taylor has not sought to do. Instead he asks us to conclude from some fleeting questions and responses in an otherwise manifestly fair record that the prosecutor so overstepped the bounds of his office that we should order a new trial. We are of the opinion that these passing questions and responses, which could not reasonably have affected the jury's deliberations, do not justify a new trial.

Application for rehearing denied.