PEOPLE v PORTMAN

1. Criminal Law—Automobiles—Stopping of Automobile—Roll-
   . ing LEIN Check—Improper License Plates.
   The stopping of a defendant's automobile by police officers was
   reasonable where the officers had run a rolling LEIN check on
   the automobile's license plates and the check showed that the
   license plates belonged to a different automobile.

2. Criminal Law—Custodial Interrogation—Juveniles—Standing
   to Challenge.
   A defendant lacks standing to challenge the legality of a custo-
   dial interrogation of another person and the use against the
   defendant of the statements obtained.

3. Searches and Seizures—Automobiles—Search Without a War-
   rant—Unusual Circumstances—Drugs and Narcotics—Re-
   liability of Information—Penal Interest.
   A search without a warrant of an automobile may be justified
   under unusual circumstances; therefore, an immediate search
   without a warrant of a defendant's automobile was justifiable
   where the police officers had placed the driver and other
   occupants of the car under arrest and had relied on informa-
   tion given to them by a juvenile who had been in the automo-
   bile at the time the officers stopped the car that there were
   quantities of narcotics in the car, and the information given as
   to the presence of narcotics in the automobile was undoubtedly
   reliable because it was against the juvenile's penal interest.

4. Searches and Seizures—Automobiles—Search Without a War-
   rant—Removal to Police Station—Immediate Search—
   Probable Cause.
   There is no difference, for purposes of determining whether a

References for Points in Headnotes

[1, 3, 4–7] 7 Am Jur 2d, Automobiles and Highway Traffic § 53.
   68 Am Jur 2d, Searches and Seizures §§ 43–45, 99.
   Validity, under Federal Constitution, of warrantless search of auto-
      mobiles—Supreme Court cases. 26 L Ed 2d 893.
[2] 21 Am Jur 2d, Criminal Law §§ 313, 314.
   29 Am Jur 2d, Evidence § 543 et seq.
[4–7] 68 Am Jur 2d, Searches and Seizures § 2.

search is reasonable, between seizing an automobile and promptly searching it without a warrant upon its removal to the police station and carrying out an immediate search without a warrant at the scene, as long as probable cause is present.

5. BAIL—STATUTES—MISDEMEANORS—DRUGS AND NARCOTICS—FORMAL CHARGES—SEARCH WARRANTS—APPEAL AND ERROR.

It was reversible error for a trial court to rule that defendants were denied their statutory right to bond where the defendants were arrested for a misdemeanor but the real purpose for which the defendants were being held was for a narcotics violation, even though they were not formally charged until a search warrant was obtained (MCLA 780.581; MSA 28.872[1]).

6. SEARCHES AND SEIZURES—REASONABLENESS—TOTALITY OF CIRCUMSTANCES—GOVERNMENTAL INVASION—PERSONAL SECURITY.

The central issue in any search and seizure inquiry is the reasonableness in all the circumstances of a particular governmental invasion of a citizen's personal security.

7. SEARCHES AND SEIZURES—SEARCH WITHOUT A WARRANT—REASONABLENESS OF SEARCH—PROBABLE CAUSE.

A search without a warrant of defendants was reasonable where the search was conducted after receipt of reliable information by the officers conducting the search and the information indicated that the defendants had narcotics on their person, thus establishing probable cause, and the police officers were attempting to obtain a search warrant, but due to the fact that the defendants were picked up at 1:30 a.m. a magistrate was not available to issue a warrant until 8 a.m.

Appeal from Wayne, Thomas Roumell, J. Submitted November 5, 1976, at Detroit. (Docket No. 26186.) Decided January 17, 1977.

David Portman, Samuel Currie, and Charles Currie were charged with unlawful possession of LSD, possession of marijuana with intent to deliver, and possession of marijuana. The defendants moved to suppress as evidence the narcotics which were seized after their arrest, and an order was entered suppressing this evidence and quashing

the information. The people appeal by leave granted. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Patricia J. Boyle,* Principal Attorney, Research, Training and Appeals, and *Timothy A. Baughman,* Assistant Prosecuting Attorney, for the people.

Before: R. M. MAHER, P. J., and D. E. HOLBROOK and N. J. KAUFMAN, JJ.

D. E. HOLBROOK, J. On March 18, 1975, David Portman, Samuel Currie, Charles Currie, and Larry Anthony[1] were charged with the following offenses: Count I—unlawful possession of LSD with intent to deliver, Count II—possession of marijuana with intent to deliver, Count III—possession of marijuana, MCLA 335.341; MSA 18.1070(41). On April 14, 1975, a preliminary examination was held and defendants were bound over on the above charges, except Count I was modified to strike the element of intent to deliver.

In circuit court defendants moved to suppress the seized narcotics. The circuit judge granted suppression of the evidence in an opinion dated July 22, 1975. The trial judge held that a Canadian juvenile, not a party to this appeal and not charged in this incident, was "illegally arrested" and that this illegality tainted the seized narcotics which were to be used against defendants. The trial court also held on the basis of *People v Dixon,* 392 Mich 691; 222 NW2d 749 (1974), that these defendants' statutory rights to be released upon posting bond in lieu of being taken into custody on a misdemeanor charge were violated.

---

[1] The case against Larry Anthony was apparently nolle prossed.

The people were granted delayed leave to appeal on the circuit judge's opinion of July 22, 1975, and his order suppressing the evidence and quashing the information.

Apparently the trial judge relied on the preliminary examination testimony as a factual record to support his order. A brief recital of the facts disclosed at the preliminary examination is essential for a proper resolution of this case.

About 1:30 a.m. on March 17, 1975, two Michigan State Troopers observed a 1975 Cadillac with five occupants traveling north on US-24. The officers, seeing a 1974 sticker on the license plates, ran a rolling LEIN check on the Cadillac's license plates. Apparently the reasons for doing so were two-fold. One, it was unusual for a 1975 automobile to have 1974 license tags and the officers customarily run a check on expensive late model cars since they are the type likely to be stolen. When the LEIN check revealed the plates belonged to a 1968 Cadillac, the officers stopped the car and asked the driver, defendant Portman, for identification. The defendant produced an Ohio operator's license and a registration certificate for the 1975 Cadillac.

At that time there was no citation or arrest for a traffic violation. However, the troopers, after observing the other occupants of the car, asked for further identification. The other four occupants were three adult black males and one juvenile, Jeffrey Edwards, a white male whose identification showed him to be 16 years old. The officers then asked the juvenile to have a seat in the patrol car where he was read his *Miranda* [2] rights and he subsequently gave a statement indicating that

[2] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694; 10 ALR3d 974 (1966).

there were narcotics in the trunk of the Cadillac and on the occupants of the car. One of the troopers then approached the Cadillac and advised the remaining occupants that they were to exit the car. The occupants were then placed under arrest for contributing to the delinquency of a minor, a misdemeanor, and given a shakedown search for offensive weapons. The officers radioed for assistance, the defendants were taken into custody and the automobile was transported to the state police post by wrecker.

On the basis of the information given to the officers by the juvenile a search warrant for the Cadillac was obtained from a district court judge at approximately 8 o'clock in the morning, as soon as a judge was available. According to Edwards' statements he and the defendants involved chipped in and bought a large amount of marijuana. Edwards watched while the marijuana was loaded into the trunk of the automobile. Also, on the basis of this information the defendants were taken into custody where they were booked on the misdemeanor charge and subsequently subjected to a complete shakedown search of their persons. At no time were they advised of their right to bond. As indicated, defendants successfully sought suppression of the narcotics found in both the automobile and on defendant Portman's person.

I

At the outset we feel it is necessary to determine the propriety of the initial stop and the subsequent questioning of Edwards, a juvenile. Apparently defendants did not seriously challenge the legality of the initial stop. The police officers ran a rolling LEIN check on the automobile's license plate. The check showed the license plate

belonged to a different automobile. The trial judge ruled this stop was justified and we concur that the stop was reasonable. See *Terry v Ohio,* 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968).

From here on we disagree with the trial court's analysis. The trial court held that Edwards was arrested,[3] and that his arrest was not justified under the circumstances, and, furthermore, that therefore all the actions taken by the officers were in violation of the constitutional rights of the juvenile and the defendants. Whether or not the juvenile was under "arrest" under these circumstances for purposes of a juvenile proceeding involving this boy is not before us.

The admissibility of the juvenile's statements in any proceeding, criminal or juvenile, against himself is not before us. The determination of that question would involve a more thorough analysis than is necessary for this appeal. Under the reasoning of *Wong Sun v United States,* 371 US 471; 83 S Ct 407; 9 L Ed 2d 441 (1963), *Alderman v United States,* 394 US 165; 89 S Ct 961; 22 L Ed 2d 176 (1969), *reh den,* 394 US 939; 89 S Ct 1177; 22 L Ed 2d 475 (1969), *Brown v United States,* 411 US 223; 93 S Ct 1565; 36 L Ed 2d 208 (1973), the defendants lack standing to challenge the legality of the custodial interrogation of the juvenile and the use of statements then obtained.

After having been fully advised of his rights, the juvenile indicated that narcotics were in the possession of defendants. Even without this statement, the officers may have had probable cause to

---

[3] After the arrest of the juvenile's companions, defendants herein, the officers also escorted the boy to the police station. After arriving at the police station, the boy's parents were notified, he was then turned over to the Border Patrol and the Border Patrol in turn turned him over to the Royal Canadian Mounted Police, who transported the boy home. The boy was not charged with any crime.

arrest the defendants for contributing to the delinquency of a minor. MCLA 750.145; MSA 28.340. Once they were advised that narcotics were at hand, there was no doubt that they had sufficient grounds to arrest defendants on various charges.

II

Having determined that the arrest, or investigative detention, of the juvenile did not taint or affect the legality of the subsequent searches, we must now look at those searches themselves to determine their independent propriety. The information relied on as a basis for the search was undoubtedly reliable. The juvenile informant's statement was against his own penal interest, *United States v Harris,* 403 US 573; 91 S Ct 2075; 29 L Ed 2d 723 (1971), and there were no circumstances which would indicate any doubt as to the validity of the statement. There was also no serious contention of undue duress or compulsion on the part of the police officers.

The problem we are faced with, however, is that after the officers received this information, they arrested the defendants on a misdemeanor offense, an offense which is included as among those for which, if defendant is not brought before a magistrate without delay, entitles the defendant automatically to bond. MCLA 780.581; MSA 28.872(1).

The search of the automobile was unquestionably valid. The officers had placed the defendants under arrest and had reliable information that illegal substances were in the automobile. It has long been established that a warrantless search of an automobile may be justified under unusual circumstances. *Carroll v United States,* 267 US 132; 45 S Ct 280; 69 L Ed 543 (1925), *Chambers v*

*Maroney,* 399 US 42; 90 S Ct 1975; 26 L Ed 2d 419 (1970), *reh den* 400 US 856; 91 S Ct 23; 27 L Ed 2d 94 (1970), *People v Bukoski,* 41 Mich App 498; 200 NW2d 373 (1972). Our Court has held that in determining whether a search is reasonable there is no difference between seizing the automobile and promptly searching it at the police station without a warrant or carrying out an immediate search of the automobile at the scene as long as probable cause is present. *People v Bukoski, supra.* We do recognize the preference for obtaining a warrant where possible. *People v Weaver,* 35 Mich App 504; 192 NW2d 572 (1971). In the instant case, an immediate search of the automobile was justifiable. However, the officers went one step further and delayed their search a few hours until a warrant could be obtained. We recognize that police officers cannot be experts in such a volatile area of the law as search and seizure. Apparently they also recognized that fact and sought a warrant in order to prevent any subsequent challenge to this search. In the meantime, the defendants were charged with a bailable offense and, they contend, denied their right to post bail and leave. However, we feel that the police were justified in holding the car until a warrant could be obtained, even if the defendants were free to go on bail. The officers were acting in the interest of all by seeking a warrant as soon as a judge was available and even had the defendants been denied their right to bail, this did not affect the legality of the search of the automobile. This automobile could have been searched at the scene or upon arrival at the police station without a warrant. The fact that the officers subsequently did obtain a warrant should not render the search and seizure of the narcotics involved improper.

We must also reverse the trial court's finding

that defendants were denied their statutory right to bond pursuant to MCLA 780.581; MSA 28.872(1). We believe the trial court has misread the Supreme Court's opinion in *People v Dixon,* 392 Mich 691; 222 NW2d 749 (1974). In *Dixon,* the defendant was arrested after a minor traffic offense (operating a motor vehicle with a suspended license). Defendant was frisked and then transported to the county jail. While in custody upon the minor offense, defendant was subsequently searched and heroin was found. At no time was defendant advised of his right to post bail in order to obtain his release. However, the Court also noted that:

"Dixon had already been searched for weapons before even entering the police car. The station house procedures were not intended nor could they be justified as a further search for either weapons or possible fruits of the crime." (Emphasis added.) *Dixon, supra,* at 706; 222 NW2d at 755.

In the instant case, the defendants were arrested for contributing to the delinquency of a minor, a misdemeanor within the purview of MCLA 780.581; MSA 28.872(1). However, the real purpose defendants were detained was because of the narcotics violations.[4] The officers had decided that

---

[4] One of the officers explained his actions at the preliminary examination:

"*Q. (By Mr. Sloan [prosecuting attorney] continuing)* If you had stopped this vehicle for suspected difficulty with license plates, would you have hauled it away?

"*A. [By George Lang, Michigan State Police Officer]* No, sir.

"*Q.* But you did haul it away, is that correct?

"*A.* That's correct, sir.

"*Q.* Why did you haul it away?

"*A.* Because I had reasonable cause to believe that these individuals within that vehicle had a large amount of narcotics in the trunk of that vehicle.

"*Q.* And then after you got to the station you did a strip search?

"*A.* That's correct, sir.

they needed a warrant to search the automobile. Defendants were not formally charged with the narcotics violation, however, that is clearly the purpose for which defendants were being held.

The search of the defendants was conducted after receipt of reliable information which was obtained from the juvenile and indicated that defendants had narcotics on their persons. There clearly was probable cause to conduct the search. Our Supreme Court has also held:

"In any Fourth Amendment inquiry, the central issue is 'the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security'. *Terry, [v Ohio,* 392 US 1] p 19 [88 S Ct 1868; 20 L Ed 2d 889 (1968)]. At some point the courts 'must evaluate the reasonableness of a particular search or seizure in light of the particular circumstances'. *Terry,* p 21. A similar analysis is found in *People v Eddington,* 387 Mich 551; 198 NW2d 297 (1972) at pp 564–565. The Court stressed the reasonableness of the search 'in the light of all of the circumstances'. They noted that 'the exigencies of the situation' supported the search." *People v Stergowski,* 391 Mich 714, 722; 219 NW2d 68, 72 (1974).

We feel that in light of these circumstances the search of defendants was entirely reasonable. The police officers were attempting to obtain warrants. The defendants were picked up during the early hours of the morning. A magistrate was not available until 8 a.m. The officers conducted a search of the defendants on the basis of probable cause which indicated that narcotics would be found on defendants. The officers did not follow the perfect

"*Q.* Why did you do a strip search?

"*A.* Because I believed these persons had narcotics on their persons or firearms."

course of action, however, their actions were not unreasonable.

Had the officers immediately upon receipt of the information that defendants were in possession of narcotics searched the automobile, they would have found a large amount of marijuana. Such a search would have been justified. At that point the officers would have been free to arrest the defendants on various felony charges and to conduct full searches of each of the defendants prior to incarceration. Instead, the officers were in some doubt as to the legality of a search of the automobile at the scene and without a warrant. They had been informed narcotics were there and on the persons of the defendants. They made a proper arrest for contributing to the delinquency of a minor and were authorized to take the defendants into custody. They had probable cause to believe defendants had narcotics on their persons and a search of the defendants would have been authorized at the scene. The fact that this search was made at the station instead does not make the search invalid. *People v Bukoski,* 41 Mich App 498; 200 NW2d 373 (1972). The focus of a felony narcotics investigation was upon defendants. This sufficiently distinguishes the facts in *Dixon* so as to dictate a different result. In *Dixon,* the officers had no reason to believe or even suspect that there was any criminal activity afoot other than operation of a motor vehicle without a license. In the instant case, defendants were the focus of a narcotics investigation and probable cause existed to authorize a search of their persons. The mere fact that this search was conducted in a police station after defendants had been charged with a misdemeanor other than on the scene is insufficient to justify a suppression of this evidence which was constitutionally obtained.

The trial court's order to suppress the evidence

and quash the information was improperly entered. Said order is hereby set aside and the cause remanded to the trial court for further proceedings not inconsistent with this opinion.