PEOPLE v MARCHESE

Docket No. 78-807. Submitted June 13, 1978, at Detroit.—Decided July 18, 1978. Leave to appeal applied for.

Salvatore Marchese was convicted of assault with intent to commit murder in Wayne Circuit Court, Thomas J. Brennan, J. On appeal, defendant claims he was denied a fair trial because of improper and prejudicial questions by the prosecutor during his cross-examination of the defendant and because of improper and prejudicial statements to the jury in the prosecutor's summation. *Held:*

A prosecutor may not resort to innuendo and intimations on cross-examination and argument to the jury for which there is no factual support.

Reversed and remanded.

CRIMINAL LAW—PROSECUTORS—PROSECUTOR'S ARGUMENTS—INNUENDO —INFERENCES—INTIMATIONS—CROSS-EXAMINATION—FAIR TRIAL.

Innuendo has no place in a criminal trial; a prosecutor must be confined in his remarks to his proofs and reasonable inferences therefrom, his intimations must have factual support and where these prosecutorial limitations are violated, a defendant is denied a fair trial and his conviction should be reversed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward R. Wilson,* Principal Attorney, Appeals, and *Brian Marzec,* Assistant Prosecuting Attorney, for the people.

*Carl Ziemba,* for defendant.

Before: N. J. KAUFMAN, P. J., and BEASLEY and P. R. MAHINSKE,* JJ.

REFERENCE FOR POINTS IN HEADNOTE

75 Am Jur 2d, Trial §§ 192 *et seq.,* 260 *et seq.*

* Circuit judge, sitting on the Court of Appeals by assignment.

Per Curiam. Defendant was convicted of assault with intent to commit murder, MCL 750.83; MSA 28.278. He appeals as of right, claiming numerous instances of prosecutorial misconduct.

The following colloquy occurred on cross-examination of defendant:

"Q Did you ever belong to an organization—I'm going to have to spell the name, maybe I—can't pronounce it —R-a-s-t-a-f-a-r-i-a-n?

"A Rastafarian.

"Q Did you ever belong to such an organization?

"A It's not an organization; it is just a religion.

"Q Do they have certain beliefs?

"A They believe in following Haile Selassie and Marcus Garvey, from Ethiopia.

"Q Were you pretty active in that religion?"

Defense counsel objected on the ground that religion should not be inquired into. The prosecutor stated he did not intend to get into religious beliefs and stated he would only ask one more question. The following then transpired:

"Q (by Mr. Easton, continuing): I don't intend to get into the religious aspects of it, if you can answer yes or no, fine.

"A Uh-hmm.

"Q Is it not true Mr. Taveroni, that members of that belief advocate destruction of police officials?"

Defense counsel again objected but the trial court held that the question was not inappropriate.

In *People v Osborne*, 75 Mich App 600, 602; 256 NW2d 45 (1977), *lv den*, 402 Mich 810 (1977), in reversing the defendant's conviction for improper cross-examination and argument, this Court noted:

"Defendant claims the prosecutor by his questions intimated that the defendant has committed other crimes. We agree. On cross-examination the prosecutor asked defendant if he had intimidated David Wright (a witness for the prosecution) since the trial began. There was no evidence introduced to substantiate such a question. While there was an objection and the objection was upheld, the question should not have been asked in the first place.

"The prosecutor also intimated by questions that the defendant had attempted to break into a warehouse. Again, there was no factual basis for such a question."

This case is distinguishable only by virtue of the fact that here defense counsel's objection was overruled.

Innuendo has no place in a criminal trial. The prosecutor must be confined to his proofs and reasonable inferences therefrom. Clearly, the remark was erroneous, and the error was compounded by the prosecutor's closing argument wherein he stated:

"I suggest there's a way they [drug addicts] can avoid that. They can go to a drug clinic and get off the habit. Made him [defendant] edgy to have a handcuff put on him. I submit he shouldn't have taken the heroin. You did hear about an organization he belonged to. He denied that that organization has certain plans, but again, you just—testimony about other things, he said in the past, the false names, and reasons for being in this country and so on."

The prosecutor's argument is a classic example of why there must be a factual basis supporting intimations made by the prosecutor. All a prosecutor need do is catch a defendant in a few inconsistencies. Then, the prosecutor can elicit denials on any subject and then suggest the defendant was

lying. Thus, the combination of the cross-examination and argument constitutes reversible error.[1]

In closing argument, the prosecutor also strayed dangerously close to the type of "civic duty" argument condemned in *People v Biondo,* 76 Mich App 155; 256 NW2d 60 (1977), *lv den,* 402 Mich 835 (1977), and *People v Gloria Williams,* 65 Mich App 753; 238 NW2d 186 (1975).[2] The prosecutor would be wise to avoid phrasing his remarks in that manner.

Reversed and remanded for a new trial.

BEASLEY, J., concurs in the result only.

[1] We note the prosecutor's statement during closing argument that he is "victim-oriented". We suggest that should the prosecutor shift his emphasis to being "justice-oriented", he would find that his proper concern for victims of crime would also be satisfied. We are confident that victims of crime do not want to see an innocent person convicted due to improper prosecutorial argument, for the guilty party would remain at large. Furthermore, we are certain that victims of crime do not want to see a guilty person's conviction overturned due to improper prosecutorial argument.

[2] "I'm sure it would not have done the wife of Officer Swamba, who since has died herself, it wouldn't have done or have been any consolation to her to raise two children, knowing after all it was only a drug addict that killed her husband. Nobody has a right to kill police officers. These officers are protecting us, and I think you can judge here, the fine young police officer we've seen on the witness stand. It is nice to know that those men are out there working for us."