PEOPLE v JONES

Docket No. 51792. Submitted June 10, 1981, at Detroit.—Decided April 22, 1982. Leave to appeal applied for.

Arthur Woodie Jones was charged with first-degree murder and felony-firearm in Recorder's Court of Detroit. He was convicted of second-degree murder and felony-firearm, Donald L. Hobson, J. He appealed by leave granted. Evidence connecting defendant with the shooting offered at trial included testimony by a witness who heard the gunshot from beyond a locked door, followed by the statement of an unidentified declarant: "Art, what have you done? What have you done, Art?" Another witness testified that a rifle barrel was pointing out from the wall near the doorway of the apartment in which defendant was thought to be, and there was testimony that defendant was hysterical after the shooting, declaring, "It was an accident, you know. It was an accident. God knows, it was an accident. It just went off." *Held:*

1. The trial court properly allowed two witnesses to testify concerning prior inconsistent statements they had made to the police. A prosecutor may impeach res gestae witnesses by use of prior inconsistent statements even when those statements were involuntary or coerced by the police and even when the statements are not acknowledged by the witnesses.

2. No reversible error occurs where the trial court gives an instruction cautioning the jury that impeachment testimony cannot be considered as substantive evidence. The court may

REFERENCES FOR POINTS IN HEADNOTES

[1] 63 Am Jur 2d, Prosecuting Attorneys §§ 26, 27.
  81 Am Jur 2d, Witnesses §§ 521, 596.
[2] 75 Am Jur 2d, Trial §§ 682, 860.
[3] 29 Am Jur 2d, Evidence §§ 708, 731.
[4] 75 Am Jur 2d, Trial §§ 550, 552.
[5] 40 Am Jur 2d, Homicide § 52.
[6] 21 Am Jur 2d, Criminal Law § 134.
  40 Am Jur 2d, Homicide § 50.
  52 Am Jur 2d, Malice § 1.
[7] 5 Am Jur 2d, Appeal and Error § 706.
[8, 9] 40 Am Jur 2d, Homicide §§ 56, 70, 499, 525, 533.

give the instruction in its charge to the jury rather than at the time the impeachment testimony is admitted.

3. The trial court did not err in allowing the prosecutor to ask two witnesses whether they were afraid of anything in an attempt to establish a possible motive for their testimony's deviation from statements they had previously made to police.

4. A statement may be admitted into evidence under the excited utterance prong of the hearsay rule where the following three conditions are satisfied (1) there is a startling occasion, startling enough to produce nervous excitement and render the utterance spontaneous and unreflecting, (2) the statement was made before there was time to contrive and misrepresent, and (3) the statement relates to the circumstances of the occurrence preceding it. The declarant need not be identified for an excited utterance to be admissible.

5. When ruling on a motion for a directed verdict of acquittal, a court must consider the evidence which had been presented by the prosecution up to the time the motion is made, view that evidence in the light most favorable to the prosecution, and determine whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. The court did not err in denying defendant a directed verdict on the murder charge. There was sufficient evidence from which the jury could have inferred malice, premeditation and deliberation.

6. The Court of Appeals has limited power to raise questions on its own.

7. A trial court must instruct the jury on involuntary manslaughter as well, if supported by the evidence, where the defendant is charged with murder and the court instructs the jury on voluntary manslaughter. The court erred in failing to *sua sponte* instruct the jury on involuntary manslaughter.

Reversed.

H. R. GAGE, J., dissented in part. She disagreed that the court erred in failing to give an instruction on involuntary manslaughter. She further felt that justice did not require the majority's raising the issue *sua sponte,* having already noted that the evidence was sufficient to support a conviction of even first-degree murder. She would affirm.

OPINION OF THE COURT

1. CRIMINAL LAW — WITNESSES — RES GESTAE WITNESSES — IMPEACH-
MENT.

A prosecutor may impeach res gestae witnesses by use of prior

inconsistent statements even when those statements were involuntary or coerced by the police and even when the statements are not acknowledged by the witnesses.

2. CRIMINAL LAW — EVIDENCE — IMPEACHMENT — JURY INSTRUCTIONS.

No reversible error occurs where impeachment testimony is admitted and the trial court gives an instruction cautioning the jury that the testimony cannot be considered as substantive evidence; the court may give the instruction in its charge to the jury rather than at the time the impeachment testimony is admitted.

3. EVIDENCE — HEARSAY — EXCITED UTTERANCES.

A statement may be admitted into evidence under the excited utterance prong of the hearsay rule where the following three conditions are satisfied (1) there is a startling occasion, startling enough to produce nervous excitement and render the utterance spontaneous and unreflecting, (2) the statement was made before there was time to contrive and misrepresent, and (3) the statement relates to the circumstances of the occurrence preceding it (MRE 803[2]).

4. CRIMINAL LAW — DIRECTED VERDICT — ACQUITTAL.

When ruling on a motion for a directed verdict of acquittal, a court must consider the evidence which had been presented by the prosecution up to the time the motion is made, view that evidence in the light most favorable to the prosecution, and determine whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt.

5. HOMICIDE — PREMEDITATION AND DELIBERATION.

Premeditation and deliberation may be proven in a first-degree murder trial by evidence of facts about the manner of the killing from which a jury could infer a preconceived plan to kill.

6. HOMICIDE — MALICE.

Malice involved in murder requires an intent to cause the very harm that results or some harm of the same general nature, or an act done in wanton or wilful disregard of the plain and strong likelihood that some such harm will result in the absence of any circumstance of justification, excuse, or recognized mitigation.

7. APPEAL — ISSUES NOT RAISED.

   The Court of Appeals has limited power to raise questions on its own.

8. HOMICIDE — MANSLAUGHTER — JURY INSTRUCTIONS.

   A trial court must instruct the jury on involuntary manslaughter as well, if supported by the evidence, where the defendant is charged with murder and the court instructs the jury on voluntary manslaughter.

PARTIAL CONCURRENCE AND PARTIAL DISSENT BY H. R. GAGE, J.

9. HOMICIDE — MANSLAUGHTER — JURY INSTRUCTIONS.

   *A trial court need not* sua sponte *instruct the jury on involuntary manslaughter where the defendant is charged with murder, the court instructs on voluntary manslaughter and no request for an involuntary manslaughter instruction is made.*

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Principal Attorney, Appeals, and *Janice M. Joyce,* Assistant Prosecuting Attorney, for the people.

*Chari Grove,* Assistant State Appellate Defender, for defendant on appeal.

Before: D. C. RILEY, P.J., and CYNAR and H. R. GAGE,* JJ.

PER CURIAM. Defendant was charged with the offenses of first-degree murder, MCL 750.316; MSA 28.548, and possession of a firearm during the commission of a felony, MCL 750.227b; MSA 28.424(2). On February 28, 1980, the jury found defendant guilty of second-degree murder, MCL 750.317; MSA 28.549, and guilty as charged on the count of possession of a firearm during the commission of a felony. On March 11, 1980, defendant was sentenced·to serve the mandatory 2 years in

---

* Circuit judge, sitting on the Court of Appeals by assignment.

prison on the felony-firearm count and to serve a minimum of 15 years to a maximum of 40 years in prison on the second-degree murder count, the sentences to run consecutively.

Defendant's conviction arises out of a shooting incident during the early morning hours of September 29, 1979, in which the victim was shot in the face with a small caliber weapon and subsequently died from shock and loss of blood due to injury to the left carotid artery. At trial no witnesses testified that they had seen defendant shoot the victim, although statements to that effect had been given to the police before trial. Evidence connecting defendant with the shooting offered at trial included testimony by a witness who heard the gunshot from beyond a locked door, followed by the statement of an unidentified declarant: "Art, what have you done? What have you done, Art?" Another witness testified that a rifle barrel was pointing out from the wall near the doorway of the apartment in which defendant was thought to be, and there was testimony that defendant was hysterical after the shooting, declaring, "It was an accident, you know. It was an accident. God knows, it was an accident. It just went off."

Defendant's first allegation of error is without merit. The trial court properly allowed two witnesses to testify concerning prior inconsistent statements they had made to the police. Defendant's argument that the statements were involuntary and coerced has no bearing on their admissibility. There is no authority to extend the personal right of a defendant against coerced self-incrimination to include statements made by witnesses. In addition, defendant had no standing to raise the issue of violation of the rights of third parties. See *Wong Sun v United States,* 371 US 471; 83 S Ct

407; 9 L Ed 2d 441 (1963); *People v Portman,* 73 Mich App 366; 251 NW2d 589 (1977). Exclusion of the prior statements would have interfered with the prosecutor's right under statute, MCL 767.40a; MSA 28.980(1), and under judicial rule, MRE 607(2)(A), to impeach witnesses at trial. Defendant's call for a *Walker* hearing to determine the voluntariness of the witnesses' statements is an empty request. The rule of *People v Walker (On Rehearing),* 374 Mich 331; 132 NW2d 87 (1965), applies to criminal defendants whose confessions may have been illegally or involuntarily obtained. Statements of witnesses are not included under the rule. Defendant's reliance on the decision in *Higdon v Kelley,* 399 Mich 209; 63 NW2d 592 (1954), is misplaced. The *Higdon* Court applied its decision to the problem of impeachment of one's own witness in civil cases; the Court specifically articulated the statutory right of the prosecutor in criminal cases to impeach his own res gestae witnesses by use of prior inconsistent statements without those witnesses acknowledging the statements.

The further claim that the trial court erred in allowing the prior inconsistent statements to be used substantively lacks merit. Defendant offers no proof that the prior inconsistent statements of the two witnesses were used substantively. Defendant supports this claim with no more evidence than that the impeachment occurred. Contrary to defendant's contention, the impeaching statements did not contain the only evidence offered at trial linking defendant to the shooting.

Defendant has provided no case authority to support his contention that the trial judge should have instructed on the use of impeachment evidence at the time the impeachment occurred. The

standard in Michigan is that reversible error will be found where the trial court fails to give an instruction cautioning the jury that impeachment testimony cannot be considered as substantive evidence. *People v Durkee,* 369 Mich 618; 120 NW2d 729 (1963). In the instant case, the jury received the proper instruction on the use of impeachment testimony in the trial court's final instructions to the jury. Consequently, there was no error involved in the use of the impeachment testimony at trial.

It was not reversible error for the prosecutor to be allowed to ask two witnesses whether they were afraid of anything without establishing a factual basis for the questions. The prosecutor's brief questioning of two witnesses was allowed to establish possible motive for the deviation from their prior statements made to police. These references were not specific enough to rise to the level of inflammatory insinuation and prejudice necessary for reversal under our cases. See *People v Dorrikas,* 354 Mich 303; 92 NW2d 305 (1958); *People v Marchese,* 84 Mich App 775; 270 NW2d 687 (1978); *People v Rohn,* 98 Mich App 593; 296 NW2d 315 (1980). The prosecutor did not allege that defendant had attempted to frighten the witnesses; he did not ask whether they were approached by anyone; he asked only the very general question. He also abandoned the question when it was answered in the negative. Under these circumstances, the questions were not prejudicial and the trial judge did not err in allowing them for purposes of revealing motive and in not instructing the jury as to the lack of supporting evidence.

The admission of the statement of an unidentified declarant was not erroneous. The statement qualified as an excited utterance under MRE

803(2) and was thus admissible as a hearsay exception. See *People v Carson,* 87 Mich App 163; 274 NW2d 3 (1978). A determination of its admissibility does not depend upon the fact that the declarant was unidentified but upon a determination of whether the statement involved the circumstances of the shooting. We find that, because the shooting in the apartment building was such a startling event and because the utterance so closely followed that event, there was a sufficient inferential link to relate the declaration to the circumstances of the event, despite the fact that the declarant was unidentified, and, thus, the statement was properly admitted. Furthermore, the admission by defendant that "it was an accident * * *" which was brought out in the testimony of another witness renders harmless any error.

Defendant contends that the trial court should have granted defendant's motion for a directed verdict on the murder charge.

The trial court, in ruling on a motion for a directed verdict of acquittal, must consider the evidence presented by the prosecution up to the time the motion is made, *People v Garcia,* 398 Mich 250, 256; 247 NW2d 547 (1976), view that evidence in a light most favorable to the prosecution, *People v Vail,* 393 Mich 460, 463; 227 NW2d 535 (1975), and determine whether a rational trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt, *People v Hampton,* 407 Mich 354; 285 NW2d 284 (1979).

We find that there was suffficient evidence to establish the existence of each element of the crime beyond a reasonable doubt.

Having previously found the statement "Art, what have you done" admissible as an excited

utterance, we find such a statement, immediately following the gunshot as it did, coupled with the evidence of the defendant's statement to a witness that it was an accident, to be sufficient to establish beyond a reasonable doubt that defendant was the man who shot the deceased.

Having established sufficient support for finding defendant to be the gunman, the only other serious question is whether the element of intent is supported by evidence sufficient to establish its existence beyond a reasonable doubt.

A review of the testimony describing the shooting is in order. The victim, Stanford, had gone to the scene of the crime, an apartment building in Detroit, with Gary Watson for the purpose of buying "some pills". Watson testified that he and the victim talked to two men, David Merrill and Fred York, outside the building about pills and were told that pills could be had inside. Merrill and York entered the apartment building followed by the victim and Watson. Watson testified that he could not follow the three men into the building past the second door of the entrance because it locked in front of him. While waiting outside, Watson heard one gunshot, then he heard a female voice say, "Art, what have you done. What have you done, Art." Watson testified that he then saw Merrill and York run downstairs by way of the back staircase. Watson called the police and was arrested and taken to jail for questioning after they arrived. Watson testified that he did not see defendant on the night of the incident.

David Merrill entered the apartment building just ahead of the victim. He testified that, when he reached the second floor, the only person he could see in the hallway was Fred York, who was further down the hall. Then Merrill heard a shot as

he was about to knock on a door. He immediately
ran down the hall but turned in time to see the
victim fall back down the stairs to the landing
below the second floor. Merrill testified that he did
not see defendant until after Merrill called the
police at which time he saw defendant standing
downstairs in the apartment building.

Fred York testified that he preceded Merrill and
the victim up the stairs to the second floor and
that he saw Stanford fall back down the stairs
after he was shot. York further testified that he
did not see anyone shoot Stanford nor did he see
any weapon in the hallway. York then testified
that he told the police the truth in his signed
statement to them but he denied saying that he
had seen a man with a rifle standing by the stairs.
At this point, York did testify that he saw a rifle
"pointing out from the side of the wall" but that
he did not see who shot the rifle or who was
holding it. This rifle, York testified, was sticking
out of the wall right next to the apartment door of
his sister, Linda Williams.

Linda Williams testified that defendant was liv-
ing with her in the apartment on the second floor
at the time of the incident. At the time that she
heard the shot, she thought defendant was in the
bedroom of the apartment. She testified that she
did not see defendant in the hallway when she
opened the door after hearing the shot. Williams
did testify that defendant was hysterical in the
bedroom of the apartment after the police had left.
She further testified that defendant kept mum-
bling, "It was an accident, you know. It was an
accident. God knows, it was an accident. It just
went off."

Contrary to defendant's assertions, there was
testimony by one witness establishing that he saw

a rifle protruding into the hall immediately after the shot was fired. The victim was standing in the hallway at the top of the stairs when he was shot in the face. It is clear that the gunman aimed a firearm at the victim from a concealed location (inside the apartment), since none of the people present in the hallway were aware of his presence until the shot was fired. Factors to be considered in determining the existence of premeditation and deliberation include facts about the manner of the killing from which a jury could infer a preconceived plan to kill. *People v Gill,* 43 Mich App 598, 602-603; 204 NW2d 699 (1972).

Defendant relies on a number of cases where the question of deliberation and premeditation is considered in the context of a struggle. See, *e.g., id., People v Morrin,* 31 Mich App 301; 187 NW2d 434 (1971). In the instant case, there is a conspicuous absence of any circumstances such as a struggle, an attack by the victim or any other unexpected occurrence that would prompt an unthinking use of the firearm. While it is true that use of a deadly weapon is not, of itself, sufficient to infer premeditation, we think that the manner in which the shooting took place is sufficient when coupled with the use of a firearm to establish beyond a reasonable doubt a premeditated intention to kill. See *People v Vinunzo,* 212 Mich 472; 180 NW 502 (1920). We note that a jury could choose to disbelieve defendant's statement that the gun discharged accidentally even while accepting the fact that he made that statement. It is the jury's task to weigh the evidence and decide which testimony to believe. See *People v Smalls,* 61 Mich App 53, 57-58; 232 NW2d 298 (1975).

We next address defendant's contention that there was no evidence sufficient to support a find-

ing of malice, a necessary element of second-degree murder. The same aspects of the shooting in which we find support for deliberation and premeditation necessarily supply the element of malice.

The actual intent to kill is not an essential element to the crime of second-degree murder in Michigan. What is essential is that the killing be done with malice. *People v Davis,* 76 Mich App 187, 189; 256 NW2d 576 (1977). This Court in *People v Morrin, supra,* 323 stated that malice is present even where there is no actual intent to kill if the actual intent is to inflict great bodily harm or to engage in behavior the natural tendency of which is to cause death or great bodily harm. The Supreme Court has held that:

"Malice requires an intent to cause the very harm that results or some harm of the same general nature, or an act done in wanton or wilful disregard of the plain and strong likelihood that some such harm will result. It requires also on the negative side the absence of any circumstance of justification, excuse, or recognized mitigation." *People v Hansen,* 368 Mich 344, 350-351; 118 NW2d 422 (1962).

In a recent articulation of the concept of malice, the Supreme Court in *People v Aaron,* 409 Mich 672, 728; 299 NW2d 304 (1980), stated that:

"Accordingly, we hold today that malice is the intention to kill, the intention to do great bodily harm, or the wanton and willful disregard of the likelihood that the natural tendency of defendant's behavior is to cause death or great bodily harm."

While a person accused of second-degree murder must have caused the death of the decedent, the prosecution need only establish that the defendant

created and disregarded a very high degree of risk of death at the time of his death-causing activities. *People v Hill,* 94 Mich App 777, 781; 288 NW2d 408 (1979); *Guilty Plea Cases,* 395 Mich 96, 131; 235 NW2d 132 (1975).

The testimony that a rifle barrel was seen protruding into the hall immediately after the shot was heard allowed the reasonable conclusion that the gunman intentionally aimed and fired the loaded rifle at the victim. This establishes the requisite creation and disregard of the high degree of risk of death at the time of the shooting which is necessary for the jury to find malice. Thus, there was sufficient evidence to justify submitting the question of second-degree murder as well as manslaughter to the jury.

In response to defendant's argument that the circumstantial evidence is equally consistent with guilt or innocence, we must disagree. Under the circumstances of this case, we believe that a reasonable trier of fact could reject defendant's theory of accident as unreasonable. Again, the manner of the shooting belies a theory of accident. If defendant had been handling the gun in his apartment, perhaps cleaning it, an accidental discharge might be a reasonable explanation, but the fact that the weapon was projecting into the hallway and at the victim is certainly a compelling enough circumstance to outweigh and negate the theory of accident.

Although none of the issues raised by defendant mandate reversal, it is necessary to address an issue which was not raised by either party on appeal. Generally, the Court will not address such issues. However, in an effort to dispense justice, the Court has limited power to do so. *People v Noel,* 88 Mich App 752; 279 NW2d 305 (1979). The

issue is whether the trial court erred in not instructing on involuntary manslaughter.

Manslaughter, while not a necessarily included offense of murder, may well be an included offense if the evidence adduced at trial would support a verdict of manslaughter. *People v Van Wyck,* 402 Mich 266, 269; 262 NW2d 638 (1978). Further, it is reversible error for the trial court to fail to instruct on manslaughter when there is evidence to support such a theory and where a proper request for such an instruction is made. *Id.*

In the instant case, defendant requested an instruction on manslaughter, and the trial court did instruct on voluntary manslaughter but neglected to instruct on involuntary manslaughter.

In *People v Ora Jones,* 395 Mich 379, 393; 236 NW2d 461 (1975), the Supreme Court found reversible error for failure to instruct on involuntary manslaughter where, although not requested to do so, the trial court instructed only on voluntary manslaughter. Citing *Ora Jones,* this Court, in *People v Heard,* 103 Mich App 571, 576; 303 NW2d 240 (1981), stated that the trial court's undertaking to instruct on voluntary manslaughter created a duty to instruct on the cognate included offense of involuntary manslaughter if the evidence supports such an instruction. In this case, the trial court should have instructed on involuntary manslaughter.

Reversed.

H. R. Gage, J. *(concurring in part and dissenting in part).* I respectfully dissent from that portion of the majority opinion reversing defendant's conviction for the trial court's failure to instruct the jury on involuntary manslaughter. Defendant never requested such an instruction and failed to object

when no instruction was given. He has not even raised the issue on appeal.

Defendant's theory of the case was that the shooting was accidental. Although this defense would be successful to the charges of first- and second-degree murder and voluntary manslaughter, it would not be to the charge of involuntary manslaughter. Counsel's failure to request an instruction on involuntary manslaughter may have been a conscious attempt to foreclose the possibility of any conviction should the jury believe that the shooting was an accident. In the absence of a request for an instruction, the trial court should not inject itself into what usually amounts to legitimate trial strategy on the part of either the defendant or the prosecutor. *People v Herbert Van Smith, Jr,* 30 Mich App 384, 388; 186 NW2d 378 (1971), *rev'd* 388 Mich 457; 203 NW2d 94 (1972).[1]

I also disagree with the majority's raising the issue *sua sponte* because of its belief that justice so requires. The trial court instructed the jury on first- and second-degree murder and voluntary manslaughter. Defendant's theory was that the shooting was accidental. The jury could have believed defendant's theory and acquitted him on all charges. It did not. The jury could have believed that the killing was intentional but without mal-

---

[1] Although the defendant's conviction was reversed by the Supreme Court, only two justices joined in the Court's opinion. Three justices concurred in the result only, and Justice BRENNAN dissented, stating:

"I must dissent. The notion that the *jury* has a 'right' to be properly instructed is altogether novel. A criminal trial is concerned with the rights of the *defendant.* If the defendant for tactical or other reasons chooses to permit the case to go to the jury on the principal charged offense, without mention of lesser included offenses, that, too, is his right." *People v Herbert Van Smith, Jr,* 388 Mich 457, 462-463; 203 NW2d 94 (1972) (T. E. BRENNAN, J., *dissenting).*

See, also, *People v Taylor,* 44 Mich App 640, 645, fn 6; 205 NW2d 884 (1973); *People v Carroll,* 49 Mich App 44, 51; 211 NW2d 233 (1973), *aff'd* 396 Mich 408; 240 NW2d 722 (1976).

ice. It did not. Its conviction of defendant for second-degree murder demonstrates that, although it may have had a reasonable doubt as to whether defendant acted with premeditation and deliberation, it had no such doubt that he acted with malice and not by accident. The majority has specifically noted that the evidence was sufficient to support both findings. Under these circumstances I fail to see how one can conclude that justice was not dispensed.

I concur with the majority's resolution of each issue raised by defendant. I would affirm the conviction.