## PEOPLE v DAVID WELLS

Docket No. 78-1106. Submitted March 12, 1980, at Lansing.—Decided December 2, 1980. Leave to appeal applied for.

David L. Wells was convicted of first-degree murder, felony-murder (robbery) and felony-murder (larceny) on each of three counts charged in the shooting deaths of Merle Behmlander, Earl Brown and Manny Almaguer in the Bay Circuit Court, John X. Theiler, J. He was tried separately from two codefendants, Donald Hall and Ronald Wiltse. The prosecutor sought to prove that defendant acted in concert with Wiltse and Hall, who actually fired the fatal shots. Defendant was theorized to have agreed to aid and abet in the murders because of "bad blood" between Wiltse and Manny Almaguer and because defendant and codefendants were attempting to revive the Bay City chapter of the Outlaws motorcycle gang. Manny Almaguer was a retired member of the Devil's Disciples, a rival gang. The felony-murder charges were based on the perpetration of two felonies: the armed robbery of Almaguer's leather vest with his motorcycle insignia or "colors" and the larceny of a candle holder with an ornamental cross. Defendant appeals. *Held:*

1. Defendant claims that the admission of extensive evidence of past gang rivalry and individual episodes of violence between the motorcycle clubs was reversible error. The prosecutor offered the evidence as "background" to establish motive. However, there was no evidence to show that defendant was a member of either motorcycle club or that he knew about the violent activities or that they had any bearing on his conduct.

REFERENCES FOR POINTS IN HEADNOTES

[1] 40 Am Jur 2d, Homicide §§ 280, 439, 440.
[2] 29 Am Jur 2d, Evidence § 339 *et seq.*
[3] 29 Am Jur 2d, Evidence §§ 324, 325.
[4] 16 Am Jur 2d (Rev), Conspiracy § 40 *et seq.*
   29 Am JUr 2d, Evidence § 320 *et seq.*
[5] 21 Am Jur 2d, Criminal Law § 8.
[6] 40 Am Jur 2d, Homicide § 71 *et seq.*
   Application of the felony murder doctrine where the felony relied upon is an includible offense with the homicide. 40 ALR3d 1341.

The evidence was irrelevant and was introduced to inflame the passions and prejudice of the jury.

2. The prosecutor abused his discretion in overcharging the defendant. There was no evidence that a determination to steal any property was formed prior to or contemporaneously with the homicides.

Reversed and remanded.

1. HOMICIDE — FIRST-DEGREE MURDER — EVIDENCE — MOTIVE.

Proof of motive, in a trial for first-degree murder, while not essential, is relevant to premeditation and deliberation and is especially relevant where the defendant does not deny being present at the scene but claims mistake, accident or lack of intent.

2. CRIMINAL LAW — EVIDENCE — CHARACTER EVIDENCE — RULES OF EVIDENCE.

Evidence of a person's character is inadmissible to prove his conduct in a charged criminal transaction (MRE 404[a]).

3. CRIMINAL LAW — EVIDENCE — SIMILAR ACTS — STATUTES.

Only evidence of like acts *of the defendant* are admissible under the similar acts statute to prove motive or intent of the defendant (MCL 768.27; MSA 28.1050).

4. CONSPIRACY — EVIDENCE — SIMILAR ACTS OF OTHERS.

Evidence of similar acts of a codefendant may be admissible against a defendant to the extent it is material in proving motive, intent, scheme or plan, or absence of mistake or accident in participating in an illegal enterprise, but the evidence is only admissible after the prosecutor has shown evidence of agreement and knowledge to engage in the unlawful enterprise; there must be some evidence of agreement and knowledge beyond mere inference.

5. CRIMINAL LAW — OVERCHARGING.

A prosecutor may not proliferate the number of charges against a defendant by artificially dividing a clearly single major offense into an unreasonable number of related components.

6. HOMICIDE — FELONY-MURDER — ROBBERY — INTENT.

The felony-murder (robbery or larceny) doctrine does not apply where the determination to steal the property of the victim is not formed until after the homicide.

*Frank J. Kelley,* Attorney General, *Robert A.*

*Derengoski,* Solicitor General, *George B. Mullison,* Prosecuting Attorney, and *Thomas J. Rasdale,* Assistant Prosecuting Attorney, for the people.

*Patrick D. Brady* and *Jan Armon,* for defendant.

Before: MacKENZIE, P.J., and BASHARA and D. C. RILEY, JJ.

MacKENZIE, P.J. Following a month-long trial in Bay County before Judge John X. Theiler, defendant was convicted of first-degree premeditated murder, felony murder-robbery, and felony murder-larceny, MCL 750.316; MSA 28.548, on each of three counts charged in the shooting deaths of Merle Behmlander, Earl Brown, and Manny Almaguer. The trial judge sentenced defendant to the mandatory term of life imprisonment without parole from which defendant brings this appeal as of right.

Defendant David "Frenchy" Wells was tried separately from two codefendants, Donald Hall and Ronald Wiltse, who were convicted of first-degree murder on the same three counts on April 8, 1977.[1] The prosecutor sought to prove that defendant acted in concert with Wiltse and Hall, who actually inflicted the gunshot wounds which the medical testimony established to be the cause of each victim's death. Defendant was theorized to have agreed to aid and abet in the murders because of "bad blood" between Wiltse and Manny Almaguer and because defendant and codefendants were attempting to revive the Bay City chapter of the Outlaws motorcycle gang. Manny Almaguer was a retired member of the Devil's Disciples, a rival gang. The felony-murder charges

---

[1] Affirmed in an unpublished per curiam opinion, *People v Hall & Wiltse,* (Docket Nos. 77-2178, 77-2180, April 3, 1979).

were based on the perpetration of two felonies: the armed robbery of Almaguer's leather vest with his motorcycle insignia or "colors" and the larceny of a candle holder with an ornamental cross.

The two principal witnesses who testified against defendant, Kathy DeSmyter and Rusty Miller, were originally charged with the crimes. The charges were dropped against DeSmyter. Miller was granted immunity in exchange for his testimony.

We will first consider whether the admission of extensive evidence of past gang rivalry and individual episodes of violence between two motorcycle clubs—the Devil's Disciples and the Outlaws—necessitates reversal. The prosecutor offered the evidence as "background" and to establish the motive behind the crimes: that the victims were killed because of "bad blood" between Manny Almaguer and Ronald Wiltse and because of an attempt by defendant and his confederates to revive the Bay City chapter of the Outlaws and to uphold the honor of that club against the rival Devil's Disciples.

This issue was preserved for appellate review by defense counsel's motion *in limine* followed by repeated objections on grounds of relevance, prejudice, hearsay, and inadmissible prior acts. See MRE 401, 403, 404(b), and 801, and MCL 768.27; MSA 28.1050. The pertinent inquiry is whether Judge Theiler abused his discretion in admitting this evidence.

Defendant alleges that the most prejudicial testimony was that of Henry Flues, vice president of the Devil's Disciples and "blood brothers" with victim Manny Almaguer, who had been a retired member of that club. Flues testified that he was aware that there had been "bad blood" between

the Outlaws and the Devil's Disciples on several occasions. "They just did not like us and, yes, could never get along." Flues stated that the Devil's Disciples and Outlaws in Bay City were initially all members of the Henchmen but later split into the two rival groups. According to Flues, the Outlaws did not want a Devil's Disciples chapter in Bay City. Flues testified that he knew codefendant Donald Hall in the late 1960's and that Hall was a member of the Outlaws in Bay City. Ron "Runner" Wiltse was, according to Flues, at one time president of the Flint chapter of the Devil's Disciples.

Flues related details of a fight at a party in Detroit in 1972:

"The Outlaws crashed in. There was eight of them and ended up in—we had two black members of the Devil's Disciples and they brought in some Outlaws that didn't like blacks, so right off the bat they start. One Outlaw start calling one of our members a nigger and—."

At this point defense counsel objected, but the court allowed the prosecutor to continue this line of questioning without getting into "excessive detail". Flues then testified that the Detroit Outlaws were, at this time, affiliated with the Bay City Outlaws and that a member of the latter group, one John the Bandit from Saginaw, was present at the skirmish. Flues testified the confrontation culminated in violence: "One shot, one knife *[sic],* two got their heads busted with gun butts."

The prosecutor then questioned Flues as to whether there was shooting at a separate incident involving the Outlaws and Devil's Disciples in Saginaw. Flues answered in the affirmative but

was prevented from relating the details by defense counsel's objection. However, Flues was allowed to testify concerning an incident between the Devil's Disciples and the Flying Wheels in Flint in 1973 or 1974 at which shooting was involved, sparking a grand jury investigation. Flues did not know whether defendant was a member of the Flying Wheels at this time. The earlier testimony of Thomas Pierson indicated that defendant had once belonged to the Devil's Wheels which disbanded before the Devil's Disciples came into being. There was no testimony that defendant was ever a member of the Flying Wheels.

Flues testified that because of the trouble between the Flint Devil's Disciples and Flying Wheels, he ordered Ronald Wiltse to disband the Flint chapter. When Wiltse refused to do so, Flues sent Manny Almaguer after Wiltse's patch or colors, signifying Wiltse had been kicked out of the club. According to Flues, Almaguer returned with Wiltse's colors. Flues also testified that there was a disagreement between Almaguer and Wiltse over the sale by the club of a motorcycle belonging to Wiltse. After Wiltse was expelled from the club, Almaguer wrongfully kept and spent the proceeds from the sale of the bike, causing further bad feelings between the two.

Flues said he met defendant through Wiltse in 1973 or 1974. Defendant was allegedly a "prospect" for membership in the Devil's Disciples but never joined because of an argument in which defendant was slapped by someone and left.

In addition to defendant's general association with Hall and Wiltse, the prosecutor attempted, through Flues's testimony, to link defendant with the aforementioned incidents of gang violence by showing that defendant and his codefendants were

trying to revive the Bay City chapter of the Out-
laws:

"*Q.* (By Mr. Kennedy) Did you make any observations
or have any contact with either Hall or Wiltse which
indicated to you directly an intent to get the Outlaws
going here in Bay City again?
"*A.* Yes, with Don Hall. I went to Detroit with him
and he told me on the way to Detroit that he was going
to start the Bay City Outlaws back up again.
"*Q.* All right. Now did you make any observations as
to whom Mr. Hall was associating with in the last part
of 1975?
"*A.* Yes, I did.
"*Q.* And who was that?
"*A.* Runner, Frenchy [defendant] here, and Wish-
bone."

It was never established that defendant was a
member of the Outlaws or Devil's Disciples. Pier-
son testified that defendant might wish to become
a member of the Bay City chapter of the Outlaws
if it were organized. Kathy DeSmyter testified that
there were a couple of conversations between Hall,
Wiltse, defendant, and Rusty Miller concerning
reviving the Bay City chapter of the Outlaws.

The people argue on appeal that the testimony
of Flues about the history of violence between the
two gangs was admissible to show motive. Proof of
motive and intent was material in the case at bar
because of defendant's testimony that, although he
was present during the killings, he did not intend
to participate or aid and abet the murders. Defen-
dant also denied taking Almaguer's colors or the
candle holder.

As a general proposition, in a prosecution for
first-degree murder, proof of motive, while not
essential, is relevant. *People v Mihalko,* 306 Mich
356, 361; 10 NW2d 914 (1943). This is particularly

true where the accused does not deny participation to some extent or being present at the scene of the crime but claims lack of intent, mistake, or accident. Evidence of motive is also material in proving premeditation or deliberation.

We reject, however, the people's argument that where, as here, motive is relevant, essentially any evidence remotely connected with the accused or his social acquaintances is admissible to show motive. Even prior to the adoption of MRE 404(a), evidence of a person's character was generally inadmissible to prove his conduct in the charged criminal transaction. *People v Boske,* 221 Mich 129, 135; 190 NW 656 (1922), *People v Minney,* 155 Mich 534; 119 NW 918 (1909).

We cannot condone the admission of evidence of past episodes of motorcycle gang rivalry to prove defendant's motive for the murders. Besides the lack of evidence that defendant was a member of any of the gangs involved, there was no showing that he knew about these alleged activities or that they had any bearing whatsoever on his conduct on the morning of December 11, 1975. Given the association of codefendants with the Outlaws and Devil's Disciples, in most instances, it was not shown that they were present or involved in the conflagrations detailed in Flues's testimony. Under these circumstances, notwithstanding the broad definition of relevance under MRE 401, the evidence had no tendency to prove defendant's intent or motive.

The people suggest that the evidence was harmless in any event. We disagree. We can discern no reason for introducing the evidence except to inflame the passions and prejudice of the jury in an effort to convince them to convict defendant because of his association with violent motorcycle

gangs. Since there was a great probability that the evidence succeeded in prejudicing the jury, the trial judge abused his discretion in admitting it.

While the testimony regarding the dispute between Wiltse and Manny Almaguer may have been relevant in proving Wiltse's intent, we do not believe it was properly admissible against defendant. Under the similar acts statute, MCL 768.27; MSA 28.1050, only "like acts or other acts *of the defendant*" are admissible to prove his motive or intent. (Emphasis added.) In a case where a conspiracy is charged and proved, evidence of the similar or other acts of a codefendant may be admissible against the defendant to the extent it is material in proving motive, intent, scheme or plan, or absence of mistake or accident in participating in the illegal enterprise. See *People v Thomas Hintz,* 69 Mich App 207; 244 NW2d 414 (1976). However, before such evidence is allowed to go to the trier of fact, the prosecutor must show evidence of agreement and knowledge to engage in the unlawful purpose, *People v Atley,* 392 Mich 298; 220 NW2d 465 (1974).

In the case at bar, the prosecutor theorized that defendant, Donald Hall, and Ronald Wiltse were involved in a concert of action to murder the three victims. In *People v Shepherd,* 63 Mich App 316, 322; 234 NW2d 502 (1975), a panel of this Court noted that:

"It is well settled that admissions and statements of a codefendant are admissible against another defendant if there exists a concert of action between the defendants, and the statements are made while the common scheme or plan is still in effect, *People v Trilck,* 374 Mich 118; 132 NW2d 134 (1965), *People v Adams,* 48 Mich App 595; 210 NW2d 888 (1973). The defendants need not actually be charged with conspiracy, as long as there is

independent evidence of the required concert of action, *People v Stewart,* 46 Mich App 282; 207 NW2d 907 (1973)."

Although the unlawful agreement may be deduced from circumstantial evidence, there must be some evidence of agreement and knowledge beyond mere inference. *People v Atley,* 392 Mich 298, 313-314. It is true that the evidence showed that defendant associated with Hall and Wiltse and had been present at conversations with reference to reviving the Bay City chapter of the Outlaws. Notwithstanding, there is no evidence in the record that defendant was aware of the dispute between Wiltse and Almaguer and agreed to participate in the murders in retaliation.

Nor did testimony concerning the events at the victims' residence prior to the murders indicate that defendant had previously agreed to a plan to murder the victims. In summary, the testimony of the prior dispute between Wiltse and Almaguer should not have been admitted because it was not established to be material to defendant's motive or intent. Additionally, under the similar acts statute, the trial judge should have required the prosecutor to demonstrate outside the presence of the jury that the evidence was admissible under the statutory criteria. In reaching this conclusion, we intimate no opinion on the sufficiency of the evidence of defendant's intent.

The next issue is whether the Bay County prosecutor abused his discretion in overcharging defendant with first-degree premeditated murder, felony murder-robbery, and felony murder-larceny based on the evidence in this case. Recently, in *People v Jankowski,* 408 Mich 79; 289 NW2d 674 (1980), the Michigan Supreme Court reaffirmed the principle that the filing of a multiple count information

charging multiple offenses arising from the same transaction or a trial under such an information is permissible where the evidence could reasonably sustain such charges:[2]

"A prosecutor may not, however, proliferate the number of charges against a defendant by artificially dividing a clearly single major offense into an unreasonable number of related components. To do so might indeed result in an abuse of prosecutorial discretion or require reversal of a defendant's conviction because of the potentially coercive effect on the jury that an unreasonable number of counts might have. See, generally, *People v Feldman,* 87 Mich App 157; 274 NW2d 1 (1978); *People v Carmichael,* 86 Mich App 418; 272 NW2d 667 (1978); *People v Risher,* 78 Mich App 431; 260 NW2d 121 (1977)." 408 Mich 79, 92, fn 8.[3]

In the case at bar, defendant was charged with felony murder based on (1) the testimony of Kathy DeSmyter that she saw a wrought iron candle holder from the victims' home disposed of into the river by Rusty Miller; and (2) the testimony of Rusty Miller that defendant brought Manny Almaguer's motorcycle "colors" downstairs either before or after the guns were drawn and the testimony of Laura Griffin, as well as Rusty Miller, that subsequent to the murders, the "colors" were removed from one of the cars and burned along with the clothing of the five accomplices.

In order for defendant to be liable for first-degree felony murder the prosecutor must show that a homicide is committed during the perpetration

[2] Clearly, under the *Jankowski* analysis, defendant's multiple convictions of felony murder-robbery, felony murder-larceny and premeditated murder in relation to each victim's death could not withstand double jeopardy attack. See also *People v Carl Johnson,* 99 Mich App 547; 297 NW2d 713 (1980), and cases cited therein.

[3] We note that all of the cases cited as well as the case at bar originated from charges filed by the Bay County prosecuting attorney.

or attempt to perpetrate one of the enumerated felonies. 40 Am Jur 2d, Homicide, § 73, pp 366-367. Therefore, defendant and his cohorts must have committed the murders herein while robbing the victims of the motorcycle jacket, stealing the candle holder, or attempting to do either. "The felony murder doctrine does not apply, however, when the determination to steal property of the victim is not formed until after the homicide." *Id.* See *People v Hardy,* 33 Cal 2d 52; 198 P2d 865 (1948). Therefore, it must be shown that defendant had the intent to rob or steal prior to or contemporaneously with the murders or knew of his accomplices' intent to do so and agreed to act in concert therewith.

Regarding the candle holder, there is absolutely no evidence that any of the five intended to steal it from the house prior to or during the murders. In fact, the only mention of it is Kathy DeSmyter's testimony that, following the murders, Rusty Miller threw it in the truck and she and Rusty disposed of it in the river. Her testimony is more consistent with the conclusion that the five were attempting to dispose of evidence of the murders. Thus, charging defendant with felony murder on this ground was an abuse of prosecutorial discretion.

Nor do we believe that defendant should have been charged with felony murder because of the alleged robbery of the motorcycle colors. There was absolutely no evidence that any of the five went to the victims' residence with the specific intent to rob Manny Almaguer of his motorcycle colors. Rusty Miller did testify at trial that at some point during the night of the murders, defendant brought down Manny Almaguer's motorcycle jacket, saying "Look what I've got". Then, accord-

ing to Miller, defendant merely laid the jacket on a chair in the dining room. Miller was unable to say whether this act occurred before or after Wiltse and Hall had drawn their guns. In fact, Miller had testified at the preliminary examination and given a prior statement that Wiltse or Earl Brown was the person who brought the colors downstairs. When confronted with these statements on cross-examination, Miller was uncertain whether defendant or Wiltse brought down the colors and admitted that he had later deduced that defendant had done so because he thought that they were brought down while Wiltse and Hall were holding the victims at gunpoint.

We do not believe that the charge of felony murder on this record is consistent with the intent of the felony-murder doctrine. Rather, the evidence indicates that some of the group, notably Hall and Wiltse, went to the victims' residence to wreak vengeance on Manny Almaguer by at least starting a fight and perhaps killing him. This conclusion is supported by the testimony of their attempts to acquire guns, their conference in the bathroom at the victims' residence immediately before the murders, and the prior relationship between Wiltse and Almaguer. Seemingly, in order to compensate for the lack of hard evidence of defendant's knowledge or agreement to act in concert with them, the prosecutor used the "shotgun" method of charging defendant with felony murder on two separate bases. Additionally, by charging defendant with murder during the theft of the motorcycle colors, the prosecutor convinced the trial court to allow evidence of all the extraneous motorcycle battles and customs. To reiterate, we find this practice an abuse of prosecutorial discretion, which served to confuse the issues for the jury.

We do not make a determination as to the merit of the remaining issues raised by the defendant.

Reversed and remanded.