PEOPLE v WILLIAMS

Docket No. 71597. Submitted May 2, 1984, at Lansing.—Decided June
    18, 1985. Leave to appeal applied for.

Thomas J. Williams was convicted of first-degree murder follow-
    ing a jury trial in Saginaw Circuit Court, Robert S. Gilbert, J.
    At trial, the defendant admitted that he had fired the fatal shot
    in the direction of the victim but denied any intent to kill or
    injure the victim, asserting that he only intended to frighten
    the victim. The trial court instructed the jury on first-degree
    murder, second-degree murder, manslaughter and reckless dis-
    charge of a firearm resulting in the death of another, however
    the court refused to charge the jury on assault with intent to
    murder, assault with intent to do great bodily harm less than
    murder and felonious assault. Defendant appealed. *Held:*

S. D. BORMAN, J., would hold:

1. The requested assault instructions should have been given
    since those assault offenses were cognate lesser included offen-
    ses of the charged offense. However, the trial court's refusal to
    give those instructions was harmless error.

2. It was error to permit the prosecution to make inquiries in
    its case in chief relative to any prejudices that the defendant
    held toward the race of the victim; however, the error was
    harmless since that inquiry was limited in nature and gener-
    ally unproductive for the prosecution. The prosecution's cross-
    examination of the defendant as to his racial prejudices was
    proper impeachment, since defendant had testified on direct
    examination that he held no such prejudices.

3. The defendant failed to establish that the juror who was
    employed by the Department of Social Services and had contact

REFERENCES FOR POINTS IN HEADNOTES
[1, 4] 40 Am Jur 2d, Homicide § 482 *et seq.*
    Modern status of law regarding cure of error, in instructions as to
      one offense, by conviction of higher or lesser offense. 15 ALR4th
      118.
[2] 81 Am Jur 2d, Witnesses § 547 *et seq.*
    Cross-examination of witness as to his mental state or condition to
      impeach competency or credibility. 44 ALR3d 1203.
[3] 47 Am Jur 2d, Jury § 265 *et seq.*

with the juvenile division of the prosecutor's office was unable to render a fair and impartial verdict such that she should have been excused for cause; accordingly, the trial court did not err in refusing to excuse that juror.

SHEPHERD, P.J., concurred but concurred in the result only on the issue of refusal to give the requested assault instructions and wrote separately to express his belief that a jury should not be instructed as to assault offenses where, as here, there is no question that death resulted from a wound caused by the discharge of a firearm by the accused.

CYNAR, J., concurred but concurred in the result only on the issue of refusal to give the requested assault instruction.

Affirmed.

OPINION OF S. D. BORMAN, J.

1. HOMICIDE — JURY INSTRUCTIONS — LESSER INCLUDED OFFENSES — HARMLESS ERROR.

   *It is error for a trial court to refuse to instruct the jury on assault with intent to murder, assault with intent to do great bodily harm less than murder and felonious assault in a trial for first-degree murder arising out of a shooting death, since those assault offenses are cognate included offenses of the charged offense; however, the refusal to instruct the jury as to such assault offenses is harmless error where the trial court did instruct the jury as to the lesser included offenses of second-degree murder, manslaughter and reckless discharge of a firearm resulting in the death of another and the jury returned a verdict of murder in the first degree.*

2. CRIMINAL LAW — EVIDENCE — RACIAL PREJUDICE — MOTIVE — IMPEACHMENT.

   It is error for the prosecution in a murder trial to make inquiry as to a defendant's general feeling with respect to members of the victim's race, since a general attitude of racial prejudice is not sufficiently probative of the question of defendant's motive to outweigh the prejudice inherent in such inquiry; however, such inquiry may be made by the prosecution for impeachment purposes where the defendant has testified that he did not hate persons of the victim's race.

3. JURY — BIASED JURORS — CRIMINAL LAW.

   A defendant in a criminal prosecution who asserts that a juror was biased and should have been dismissed for cause bears the burden of showing that bias.

Opinion of Shepherd, P.J.

4. Homicide — Jury Instructions — Included Offenses.

> It is not error to refuse in a trial for first-degree murder to instruct the jury on assault with intent to murder, assault with intent to do great bodily harm less than murder and felonious assault where it is uncontroverted that the victim died from a wound caused by a bullet fired by the defendant.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Robert L. Kaczmarek,* Prosecuting Attorney, and *Annette M. Gray,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Stuart B. Lev),* for defendant on appeal.

Before: Shepherd, P.J., and Cynar and S. D. Borman,* JJ.

S. D. Borman, J. On February 18, 1983, a Saginaw County jury found defendant guilty of first-degree murder in the shooting death of Joseph Cannon. MCL 750.316; MSA 28.548. He was sentenced to life imprisonment and now appeals as of right.[1]

The homicide occurred on February 28, 1979. Defendant was driving aimlessly through the streets of Saginaw when, near the intersection of 12th and Janes Streets, he came upon an automobile and pedestrian blocking the highway before him. Willie Beatrice Choice was the driver of the automobile and Joseph Cannon was the pedestrian. Mr. Cannon and Ms. Choice were discussing a possible loan when defendant pulled up behind them. Standing on the sidewalk nearby was Can-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] In 1979, following a bench trial, defendant was convicted for the same homicide. However, on application for leave to appeal to the Supreme Court, defendant's conviction was reversed because the trial court erroneously called the prosecutor's expert witness as its own expert witness. See *People v Thomas Williams,* 413 Mich 940; 320 NW2d 666 (1982), *rev'g* 107 Mich App 798; 310 NW2d 246 (1981).

non's friend, James Chapman. Defendant was quite perturbed by what he perceived to be Cannon's and Choice's inconsiderate behavior. At that moment, Cannon signaled to defendant to back up. While defendant was doing so, Ms. Choice pulled her automobile to the shoulder of the road and defendant proceeded to pass by them. As defendant was passing by, defendant thought he heard laughter coming from the two men and he saw them give each other the "high five", *i.e.,* slap each other's hands in a congratulatory manner. At this point, defendant exchanged an obscene gesture with Cannon and Chapman. Fifteen minutes later, defendant returned to the 12th and Janes Street intersection and again exchanged obscene gestures with both Cannon and Chapman. In defendant's words, he was "pretty angry and very humiliated by the occurrence". Consequently, defendant drove his van to the house of a friend, Donald Anderson, with the thought of getting even. Defendant was at Anderson's home only a few minutes and, during that time, managed to borrow Anderson's .30-caliber M-1 carbine. Approximately thirty minutes after last seeing Cannon and Chapman, defendant returned to the 12th and Janes Street intersection. Defendant parked his van approximately 260 feet away and on the opposite side of the street from where the two men stood. Next, he removed the borrowed weapon from its protective case, loaded it, rolled down the driver's side window, briefly aimed the rifle at Joseph Cannon and fired two shots. Cannon dropped to the ground, and the carbine jammed. Within seconds, defendant was able to fix the carbine and placed a third cartridge into the weapon's chamber. He then fired one more shot. At trial, defendant testified that he fired this third shot into the base of a snow bank behind which he

claimed Cannon was hiding. Defendant believed that "that was a fairly safe place to put [the bullet]". Other witnesses, however, testified that Cannon fell on or near the sidewalk when the first two shots were fired. Defendant also testified that he did not believe that he would come close to hitting anyone. His friend, Anderson, testified that defendant was a poor marksman based upon their previous experiences at the target range. Nevertheless, one of the bullets from Anderson's rifle struck Joseph Cannon in the upper mid-right chest and exited from Cannon's arm and a second bullet struck Cannon in the mid-part of the inner portion of his right thigh and exited just over his right hip. According to expert testimony, this second bullet was administered while Cannon was lying on the ground. The bullet wound to the thigh area severed Cannon's femoral artery and was listed as the cause of Joseph Cannon's death.

On appeal, defendant raises three issues: (1) Did the trial court erroneously refuse to give defendant's requested instructions on various assault offenses? (2) Did the trial court erroneously allow the prosecutor to delve into defendant's alleged dislike of black people? and (3) Did the trial court erroneously refuse to dismiss a juror for cause because of her professional relationship with the prosecutor's office? Other facts will be highlighted where relevant to a discussion of these three issues.

I. DID THE TRIAL COURT ERR SO AS TO REQUIRE REVERSAL WHEN IT REFUSED TO GIVE THE JURY DEFENDANT'S REQUESTED INSTRUCTIONS ON ASSAULT WITH INTENT TO MURDER, ASSAULT WITH INTENT TO DO GREAT BODILY HARM LESS THAN MURDER, AND ASSAULT WITH A DANGEROUS WEAPON?

At the conclusion of defendant's trial, the trial judge instructed the jury that it could find defen-

dant either guilty of first-degree murder, MCL 750.316; MSA 28.548, second-degree murder, MCL 750.317; MSA 28.549, voluntary or involuntary manslaughter, MCL 750.321; MSA 28.553, or careless, negligent or reckless discharge of a firearm resulting in the death of another living person, MCL 752.861; MSA 28.436(21), or not guilty. Defendant's requested instructions on assault with intent to murder, MCL 750.83; MSA 28.278, assault with intent to do great bodily harm less than murder, MCL 750.84; MSA 28.279, and assault with a dangerous weapon (felonious assault), MCL 750.82; MSA 28.277, were not given to the jury. Defendant argues that the trial judge's refusal to give these requested instructions was error and that this error was not harmless because the requested instructions would have concisely and concretely presented defendant's theory of the case to the jury.

The rules which govern a trial court's obligation to instruct a jury on lesser included offenses are established and explained in *People v Chamblis,* 395 Mich 408; 236 NW2d 473 (1975), *reh den* 396 Mich 976 (1976); *People v Ora Jones,* 395 Mich 379; 236 NW2d 461 (1975), *reh den* 396 Mich 976 (1976); and *People v Phillips,* 385 Mich 30; 187 NW2d 211 (1971).

Generally, the trial court's duty to instruct on lesser included offenses is determined by the evidence. *Phillips, supra,* p 36. However, if the offense is truly a necessarily included lesser offense to the greater offense, then the trial judge *must* give the lesser offense instruction, if requested, because "the evidence will always support the lesser if it supports the greater". *Ora Jones, supra,* p 390. On the other hand, if the lesser offense is a "cognate", related, or allied offense to the higher offense, then the trial court only must give the requested in-

struction when it determines that the evidence presented would support a conviction of the lesser offense. *Id.*

A "necessarily included lesser offense" is one which has to be committed in order to complete the greater offense; *viz.,* it is impossible to commit the greater offense without first having committed the lesser offense. *Ora Jones, supra,* p 387. A "cognate lesser offense", on the other hand, is one which shares several, but not all, of the elements of the originally charged higher offense and which is of the same class or category as the higher offense. *Id.*

The question on appeal is whether defendant was entitled to the requested jury instructions on each of the assault offenses and, if so, whether the trial court's erroneous refusal to give the instructions was harmless.

The assault offenses herein involved are not necessarily included lesser offenses to the crime of first-degree murder. Criminal assault is defined as either (1) an attempt to commit a battery, or (2) an unlawful act which places another person in reasonable apprehension of receiving an immediate battery. *People v Sanford,* 402 Mich 460, 479; 265 NW2d 1 (1978). Murder, on the other hand, is the unlawful killing of another living person with malice aforethought, either express or implied. Under this definition, murder contains an element which is not included within the concept of an assault, namely, malice, that is the wanton and willful disregard of the likelihood that the natural tendency of defendant's behavior is to cause death or great bodily harm. See, generally, *People v Aaron,* 409 Mich 672, 714, 728, 745; 299 NW2d 304; 13 ALR4th 1180 (1980). Accordingly, if defendant's requested assault instructions involve lesser offenses to the crime of first-degree murder, they

must be construed as cognate lesser offenses, rather than necessarily included lesser offenses.

From my review of the elements of each of the assault offenses presented here, I conclude that they are indeed cognate offenses to first-degree murder. Each of the assault instructions requested contain common elements with first-degree murder and, also, have the common statutory purpose of protecting against killing or injury of the person. *Cf. Ora Jones, supra,* p 401 (COLEMAN, J., dissenting), where former Justice COLEMAN notes various possible cognate lesser included offenses to murder. Thus, if the evidence adduced at trial would have supported a guilty verdict on the offenses for which instructions were requested, the trial judge erred by not acceding to defendant's request.

The evidence shows that defendant went to a friend's house, borrowed an M-1 rifle, returned to where he knew the victim was standing, loaded the weapon, pointed it at the victim and fired it twice. When the victim fell or jumped behind a snow bank, defendant fired again. This third shot was directed into the base of the snow bank and eventually caused the victim's death. Defendant testified that "[i]t never crossed my mind that I would come close to hitting anybody" and that he figured that the base of the snow bank "was a fairly safe place to put [the bullet]". On these facts, I determine that the jury could have easily found that defendant either assaulted Joseph Cannon with the intent to murder, with the intent to do great bodily harm less than murder, or with a dangerous weapon. Therefore, the trial court's refusal to give the requested instructions to the jury was error.[2]

---

[2] Judge SHEPHERD in his concurring opinion misapprehends the problem. He would hold that when "[t]here is no doubt that the victim died from a gunshot wound inflicted by defendant," requested

Next, it must be determined whether the error was harmless. Recently, in *People v Rochowiak,* 416 Mich 235, 248-249; 330 NW2d 669 (1982), *reh den* 417 Mich 1106 (1983), the Supreme Court acknowledged that the failure to give a requested instruction, as required, may be harmless error. See, also, *People v Herbert Ross,* 73 Mich App 588, 592; 252 NW2d 526 (1977). Nevertheless, in *Rochowiak,* the Court split as to whether the error therein was actually harmless. Two justices, with one concurring in the result only, ruled that the failure to instruct on the lesser offense to second-degree murder of careless, reckless, or negligent use of a firearm resulting in injury or death was not harmless. 416 Mich 248. Two other justices disagreed and would have held that the error therein was harmless. 416 Mich 250-251.

The plurality opinion in *Rochowiak* suggests that if the jury had been given the requested instruction it "might have better understood Rochowiak's theory and have returned a verdict of guilty of involuntary manslaughter", and that the jury "might have assessed [defendant's] argument

instructions for various assault-type offenses need not be given. This begs the question: Who decides that "there is no doubt"? Judge Shepherd suggests that a directed verdict should be issued before issues of fact are submitted to the jury. I do not agree with this conclusion and follow the well-understood rule that "a directed verdict of guilty is invalid no matter how conclusive the evidence in the case may be". As stated in *People v Chamblis,* 395 Mich 408, 421; 236 NW2d 473 (1975), *reh den* 396 Mich 976 (1976):

"Certainly no one may deny the jury's absolute right to disbelieve *all* the 'undisputed evidence' and acquit the defendant altogether. A 'jury has the power to bring in a verdict in the teeth of both law and facts'. *Horning v District of Columbia,* 254 US 135, 138; 41 S Ct 53; 65 L Ed 185 (1920)." (Emphasis in original.)

Accordingly, I cannot agree with the analysis advanced by Judge Shepherd. *Cf. People v Boles,* 420 Mich 851; 358 NW2d 894 (1984), *rev'g* 127 Mich App 759, 770-771; 339 NW2d 249 (1983) (trial court erred by refusing to instruct the jury on assault with intent to commit great bodily harm less than murder even though defendant had admitted killing the victim and raised a self-defense claim).

in a different light and with a better understanding of the gradations of responsibility in the law of homicide". 416 Mich 247-248. The *Rochowiak* dissent, however, rejected the plurality's proposition on the ground that it unnecessarily supplemented the proposed criminal jury instructions on second-degree murder and manslaughter: "[I]t has never been the office of a lesser included offense instruction to enable the jury to assess the defendant's argument 'in a different light and with better understanding', or to enable a jury to better understand the defendant's theory." 416 Mich 250.

In *People v Jones,* 115 Mich App 543, 555-556; 321 NW2d 723 (1982), this Court reversed a conviction of second-degree murder when the defendant was charged with first-degree murder and the trial judge refused to give defendant's requested instruction on involuntary manslaughter. The Supreme Court granted leave to appeal in that case to determine whether defendant was entitled to the instruction, and if so, whether the error was harmless. *People v Arthur Jones,* 417 Mich 981; 334 NW2d 373 (1983). Recently, the Supreme Court affirmed this Court without finding that the error therein was harmless. See *People v Jones,* 419 Mich 577; 358 NW2d 837 (1984). Until the Supreme Court issues a majority opinion on the standard of review for cases involving the harmless-error rule in the context of the present instructional error, we are left to grapple with the issue first-hand.

As stated in *People v Richardson,* 409 Mich 126, 139-140; 293 NW2d 332 (1980): "The doctrine of harmless error is stated in both court rule [GCR 1963, 529.1] and statute [MCL 769.26; MSA 28.1096]. The essence of this doctrine is that: 'appellate courts should not reverse a conviction unless the error was prejudicial'. *People v Robinson,*

386 Mich 551, 562; 194 NW2d 709 (1972)." (Footnotes omitted.)

After reviewing the evidence, the instructions which were actually given, and the jury's ultimate conclusion thereon, I conclude that defendant was not prejudiced by the trial court's refusal to give the defendant's requested instructions.

The requested instructions would not have helped the jury to better understand defendant's theory of the case, which rested on the belief that defendant was a poor marksman and that he did not mean to hurt anyone. Likewise, the instructions would not have caused the jury to assess the defendant's argument in a different light and with a better understanding of the gradations of responsibility in the law of homicide. And, finally, the jury found defendant guilty of first-degree murder as charged despite the trial court's inclusion of four lesser included offense instructions. Specifically, the jury must have found that defendant intentionally shot and unlawfully killed Joseph Cannon with premeditation and deliberation. Unlike the facts in *Richardson, supra,* the jurors in this case were instructed on offenses involving an intent to do great bodily harm or cause death and were also instructed on offenses involving careless, reckless, or criminally negligent conduct which results in injury and death. 409 Mich 140. Accordingly, I find that the refusal to give the requested assault instructions was nothing more than harmless error. GCR 1963, 529.1; MCL 769.26; MSA 28.1096.

II. DID THE TRIAL COURT ERRONEOUSLY PERMIT THE PROSECUTOR TO PROBE INTO DEFENDANT'S POSSIBLE BIAS AGAINST THE VICTIM'S RACE DURING THE PROSECUTOR'S CASE IN CHIEF TO ESTABLISH A MOTIVE FOR THE SHOOTING DEATH HEREIN?

During its case in chief, the prosecution asked

the trial judge to permit questioning of defendant's friend, Donald Anderson, concerning defendant's feeling toward black people "in general". The prosecution theorized that defendant shot Joseph Cannon because Cannon was black. Defendant objected to this line of inquiry because defendant's lack of intent had not been placed in issue and because the evidence was more prejudicial than probative. The trial court ruled that "the prosecutor has the right to show motive for this crime * * * with any evidence that he can produce".

As a general rule, proof of motive, while not essential, is relevant in a prosecution for first-degree murder. When a defendant claims lack of intent or accident, proof of motive is material to the case. *People v David Wells,* 102 Mich App 122, 128-129; 302 NW2d 196 (1980), *lv den* 411 Mich 980 (1981). On the other hand, evidence of a person's character trait is not admissible for the purpose of proving that he or she acted in conformity therewith on a particular occasion, except when it is offered by the accused, or by the prosecution to rebut the same. MRE 404(a)(1). Although other crimes, wrongs, or acts are admissible to prove motive, see MRE 404(b), the defendant's "general feeling" toward black people is not evidence of other crimes, wrongs, or acts. Moreover, the proposed evidence (in this case defendant's general feeling toward black people) must be validly connected to the crime charged (*i.e.,* first-degree murder) in order to be properly admissible as motive evidence. *People v Golden,* 121 Mich App 490, 494-496; 328 NW2d 667 (1982).

Just as evidence of poverty, dependence on public welfare, unemployment, and so forth is not evidence that a person committed a particular offense, see, *e.g., People v Johnson,* 393 Mich 488, 496-497; 227 NW2d 523 (1975); *People v Andrews,*

88 Mich App 115, 118; 276 NW2d 867 (1979), *lv den* 411 Mich 921 (1981), the fact that a person hates or dislikes a particular race of people does not alone establish a motive for killing a member of that race. A more *valid* connection must be shown; for example, that the defendant has, in the past, stated openly his or her hatred of the race of people in question and has committed acts which suggest a motive for the offense charged. However, the kind of evidence sought to be elicited from Donald Anderson was defendant's feeling toward black people "in general". At best, this "feeling" was defendant's privately held sentiment expressed only to his friend, Donald Anderson. We are not prepared to allow such evidence at trial to prove a defendant's motive for killing a person who happens to be a member of a race defendant may, in private, dislike.

When the prosecution initially sought to introduce this evidence, it argued that defendant had earlier testified to his dislike of blacks and that one of the reasons defendant had given for disliking blacks was that he had been attacked by blacks at a high school football game. Not only was this a mischaracterization of defendant's prior trial testimony, it also failed to establish a sufficient nexus between the racial bias evidence proposed to be introduced here (*i.e.,* defendant's feelings toward black people "in general") and the killing of Joseph Cannon. *Cf. David Wells, supra,* p 129. The prosecution never established when these prior attacks took place, what precipitated them, whether defendant was responsible for them, and how they related to the present offense. The foundation for admitting such general evidence was insufficiently laid by the prosecution. Moreover, the probative value of this evidence was outweighed by its prejudicial effect. MRE 403. As the

prosecutor conceded, racial prejudice is not a crime. Although it is unfortunate, such bias may be held by too large a segment of the total population to be of any value. Some valid connection, other than general evidence of an accused's private racial bias, must be established by the prosecution before it can be used as evidence of motive in a criminal case. To hold otherwise would inevitably allow the outcome of the case to be decided by a jury swayed by passion and prejudice.

Nevertheless, we conclude that, under the facts of this case, defendant was not prejudiced by the attempted use of this evidence. When Donald Anderson was eventually asked: "[I]n your two or three year friendship with [defendant] prior to this incident, had he ever told you what his feelings were towards black people in general?" Anderson replied: "No." And, when the prosecution attempted to impeach Anderson with a prior statement given to the police shortly after the shooting, that defendant did not especially like blacks, Anderson explained the prior statement away by saying: "When I made this statement it was very shortly after I had seen the news on t.v. And at that time I was afraid that I was going to get dragged into this [murder] as * * * [an] accomplice." The prosecution made no further inquiry of this witness nor any other witnesses regarding defendant's feelings toward black people during its case in chief. Defendant, however, argues that the prosecution did elicit racial bias evidence during its cross-examination of defendant. Defendant, however, opened the door to this evidence when he was asked during direct examination whether he hated blacks. In response to this question, defendant said, "No, I don't". At that point it was permissible to allow the prosecutor to impeach defendant with prior inconsistent testimony. MRE

404(a)(1). On this record, we perceive that the error herein was harmless beyond a reasonable doubt. GCR 1963, 529.1.

III. DID THE TRIAL COURT ERRONEOUSLY REFUSE TO DISMISS FOR CAUSE A JUROR WHO HAD A PROFESSIONAL RELATIONSHIP WITH THE PROSECUTOR'S OFFICE?

One of the prospective jurors disclosed during voir dire that she had had various contacts with the prosecutor's office on a professional basis. She was employed with the Michigan Department of Social Services as a supervisor. Her contacts with the prosecutor's office involved making referral to two prosecuting attorneys whose only duty was to prosecute paternity actions and other child support cases. They had no involvement in the prosecution of felony cases. Moreover, the juror stated that she was quite capable of rendering a fair and impartial verdict. The defendant challenged the juror for cause because, as defense counsel stated: "It's an awkward situation. And I feel almost like a patent conflict of interest if she just worked [at DSS] and didn't have any involvement". The trial judge denied defense counsel's challenge, saying: "[I]t doesn't appear to me that the connection between [this juror] and these two [prosecuting] attorneys really should interfere with her ability to render a fair and impartial verdict." We agree.

The burden was on defendant to show that the juror was biased and that she should have been dismissed for cause. *People v Marsh,* 108 Mich App 659, 667-668; 311 NW2d 130 (1981), *cert den* 459 US 854; 103 S Ct 119; 74 L Ed 2d 104 (1982). In light of the prospective juror's tenuous relationship with the main body of the prosecutor's office and her statements that she could render a fair and impartial verdict, we conclude that defendant

failed to show any bias which would require her dismissal.

Affirmed.

SHEPHERD, P.J. *(concurring)*. I agree with the result but write separately because I believe that the authorities do not necessarily mandate a conclusion that instructional error occurred.

Defendant does not dispute that the victim died from a gunshot wound inflicted by defendant. The defense theory at trial was not that something else caused the victim's death, but that defendant did not intend to kill. Defendant argued that, even though he fired several shots toward the victim, he only intended to scare him. According to defendant, since that is the intent required for an assault, *People v Joeseype Johnson,* 407 Mich 196, 210; 284 NW2d 718 (1979), the evidence would support a conviction of the assault offenses. Judge BORMAN agrees with defendant and holds that the assault instructions should have been given because of the holding in *People v Ora Jones,* 395 Mich 379; 236 NW2d 461 (1975). I do not believe *Ora Jones* requires this result.

In *Ora Jones,* the Court was concerned with the possibility that the jury might have convicted defendant of the greater offense because the judge refused to instruct on lesser offenses which reflected defendant's theory or were supported by evidence at trial. See, also, *People v Jones,* 419 Mich 577; 358 NW2d 837 (1984); *People v Richardson,* 409 Mich 126; 293 NW2d 332 (1980). As later noted by the author of the majority opinion in *Ora Jones:*

"In deciding *Ora Jones* and *Chamblis* [*People v Chamblis,* 395 Mich 408; 236 NW2d 473 (1975)] this Court was concerned with a defendant's constitutionally

guaranteed right to trial by jury. We noted that a trial court's denial of a proper request for instruction on lesser included offenses exposes a defendant to conviction on a charged offense because the jury may be reluctant to acquit one guilty only of a lesser crime. Conversely, a trial court's refusal to instruct increases the possibility that one guilty of a lesser crime may be acquitted. Either result is unnecessary. We believe a trial court's failure to give a properly requested instruction attacks the 'very heart of our jury trial system.' *People v Hampton,* 384 Mich 669, 676; 187 NW2d 404, 406 (1971)." *People v Kamin,* 405 Mich 482, 494-495; 275 NW2d 777 (1979).

The concerns expressed by the Supreme Court in *Ora Jones* and its progeny are not applicable to the instant case. Here, there was neither evidence that the victim survived nor that he died from some cause other than a shot fired by the defendant. Defendant's theory that he intended only to assault the victim was fairly covered by the instructions issued by the trial court. In my view, defendant's own theory made out a strong case of second-degree murder. Firing several shots toward a human being is, at minimum, "an act in wanton and willful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm". *People v Woods,* 416 Mich 581, 627; 331 NW2d 707 (1982); *People v Aaron,* 409 Mich 672, 714; 299 NW2d 304 (1980). The jury was also given an opportunity to convict defendant of involuntary manslaughter, a decision which would have implied a factual conclusion that defendant's conduct was criminally negligent. *Ora Jones, supra,* p 393; *People v Townes,* 391 Mich 578, 590-591; 218 NW2d 136 (1974). In addition, the trial judge actually gave one too many cognate offense instructions when he charged the jury on reckless use of a firearm, death resulting. MCL 752.861; MSA 28.436(21). Defendant admitted

that he intentionally fired the rifle several times. There was no evidence that the gun was inadvertently discharged, which proof would call for an instruction on reckless use. Compare, *Richardson, supra,* p 133; *Ora Jones, supra,* p 385.

Judge BORMAN cites Justice COLEMAN's dissent in *Ora Jones,* which contains a list of offenses (including assault offenses) which might, in her view, have to be given in murder cases as a result of the *Ora Jones* holding. It seems obvious that Justice COLEMAN was merely pointing to the possibility of defendants raising numerous claims of instructional error, based on extension of *Ora Jones* to an extreme. In my view, the appellate courts of this state should recognize that defendant's right to instructions on cognate offenses has its logical limits. I believe that in murder cases in which the only issue is the accused's intent, the extent of that right is demarcated by the uncontroverted result of his conduct, namely death. There are enough offenses involving death in the criminal code to cover any conceivable defense theory with regard to the intent of the accused. We need not burden the jury with consideration of an entire new set of offenses.

I admit that Judge BORMAN's viewpoint finds support in *People v Boles,* 420 Mich 851; 358 NW2d 894 (1984), *rev'g* 127 Mich App 759, 770-771; 339 NW2d 249 (1983). In that case, the Supreme Court found reversible error in the trial court's refusal to give an assault instruction in a murder trial. "The defense theory [self-defense] conceded that defendant had killed the deceased with a knife." 127 Mich App 771. However, the peremptory order in *Boles, supra,* is seemingly at odds with its holding in *People v Adams,* 416 Mich 53; 330 NW2d 634 (1982). In *Adams,* the Court held that an attempt instruction need not be given

in all cases upon a defense request. This obligation arises only if "the defense is that there was only an attempt and there is evidence that the completed offense may not have been committed or the defense is that the jury should not credit evidence tending to show that it was completed". 416 Mich 60. I am not convinced that in its peremptory order in *Boles* the Supreme Court intended to definitively restate Michigan law on this subject in a manner that would both negate the implications of *Adams* and push the obligation of trial judges to instruct on cognate offenses to the outer extremes alluded to by Justice Coleman in *Ora Jones*. If the Supreme Court so intended, it would be my hope that they grant leave to appeal in this case and issue a full opinion indicating that in a death case all assault charges which apply in nondeath cases must be given if requested.

In the present case, there is no proof that the victim survived or died from a cause other than the actions of defendant. The accused did not dispute the completion of the killing, nor did he deny that his own conduct was the cause of death.

Cynar, J. *(concurring)*. We are in agreement to affirm the conviction. We are in agreement that the trial court's refusal to give the requested assault instructions does not require reversal. I am unable to agree with the analysis relied upon by either of my respected colleagues in support of their position on the issue of refusing to give the requested assault instructions. On this issue, I concur in the result only.