# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
April 26, 2016

Plaintiff-Appellee,

v

No.  325542
Saginaw County Circuit Court
LC No.  14-039965-FC

MARKEST DIONTE THOMPSON,

Defendant-Appellant.

Before:  SAWYER, P.J., and MURPHY and RONAYNE KRAUSE, JJ.

PER CURIAM.

Defendant appeals by right his convictions of first-degree premeditated murder, MCL 750.316(1)(a), assault with intent to murder, MCL 750.83, possession of a firearm during the commission of a felony ("felony-firearm") (four counts), MCL 750.227b(1), felon in possession of a firearm ("felon in possession"), MCL 750.224f, carrying a firearm with unlawful intent, MCL 750.226, and carrying a concealed weapon, MCL 750.227.  We affirm.

Defendant's convictions arise out of the August 7, 2012 shooting death of Mitchell Stanford.  On that night, defendant called Stanford, with whom defendant admitted to being in the business of selling crack cocaine[1], and asked him if he had any drugs available.  Stanford agreed to meet defendant at Grant Street and asked Shayla Nelson to drive him there.  Nelson testified that she had no contact with defendant prior to the events that followed.

While in the car with Nelson, Stanford received a phone call from defendant relaying directions to where Stanford was to meet him.  However, when Nelson and Stanford arrived at Grant Street, defendant was nowhere to be found.  Instead, defendant asked Stanford to meet him at Parkside Court.  Once there, Nelson pulled the car alongside defendant and defendant began talking through the passenger-side window with Stanford.  According to Nelson's testimony, defendant asked Stanford, "You said 50, right bro?" and Stanford replied, "Yeah, 50", at which point defendant pulled out a .40 caliber handgun and fired multiple shots at Stanford before firing two shots at Nelson.

---

[1] Defendant testified that Stanford would generally find the crack cocaine and then sell it to defendant, who would resell it.

-1-

Stanford suffered multiple gunshot wounds to his head and died of those wounds. Nelson suffered damage to several internal organs requiring extensive surgery. On August 8, 2012, Nelson gave police a description of defendant and later identified defendant as the shooter from a photo line-up. Defendant went "on the run" until February 23, 2014, when he was arrested in Illinois while traveling by bus to Arizona. When initially questioned, defendant falsely identified himself as Dorian Griffin and produced the birth certificate of Mr. Griffin.[2] Among defendant's personal effects, officers found a loaded 40 caliber handgun[3] and hand-written rap lyrics in first-person prose describing the protagonist's flight from police after shooting an unnamed victim.

The trial court sentenced defendant as a fourth habitual offender, MCL 769.12, to life imprisonment without the possibility of parole for the first-degree murder conviction; concurrent terms of 75 to 114 years' imprisonment for assault with intent to murder, felon in possession, and carrying a firearm with unlawful intent convictions; and five-years' imprisonment for each felony-firearm conviction and the carrying a concealed weapon conviction, to run consecutively to and preceding all other terms. Defendant argues that the trial court erred in admitting evidence against him, that his trial counsel was ineffective, that the prosecution committed misconduct at his trial, and that the evidence presented at trial was not sufficient to support a first-degree premeditated murder charge. Defendant argues that these errors require reversal of his convictions. For the reasons discussed below, we reject defendant's claims on appeal and affirm his convictions.

## I. ADMISSION OF EVIDENCE

Defendant first argues that the trial court improperly admitted evidence that police found a handgun on him at the time of his arrest. Additionally, defendant argues, in his Standard 4[4] brief, that the trial court improperly admitted rap lyrics found on him at the time of his arrest. We disagree.

As defendant objected to the introduction of this evidence at trial, defendant's claims are preserved. *People v Standifer*, 425 Mich 543, 557; 390 NW2d 632 (1986). This Court reviews a preserved challenge regarding the admission of evidence for an abuse of discretion. *People v Orr*, 275 Mich App 587, 588; 739 NW2d 385 (2007). "A trial court abuses its discretion when it chooses an outcome that is outside the range of reasonable and principled outcomes." *Id.* at 588-89. "Preliminary questions of law, such as whether a rule of evidence or statute precludes the admission of particular evidence, are reviewed de novo, and it is an abuse of discretion to admit evidence that is inadmissible as a matter of law." *People v Bynum*, 496 Mich 610, 623; 852 NW2d 570 (2014).

---

[2] Dorian Griffin is the father of the child of defendant's ex-girlfriend, Tamia Brown.

[3] The parties stipulated that the handgun was not the gun used to commit the August 7, 2012 shooting.

[4] Michigan Supreme Court Administrative Order 2004-6, Standard 4.

Defendant points out that the gun he possessed at the time of the arrest was not the gun used during the commission of the shooting of Mitchell Stanford and that the rap lyrics he possessed did not indicate what crime the protagonist was fleeing. Defendant claims that the evidence was therefore irrelevant to the charges against him, was introduced as improper character evidence, or was otherwise unfairly prejudicial. We find the trial court properly accepted this evidence as evidence of defendant's consciousness of guilt and dismiss defendant's claims.

Generally, all relevant evidence is admissible. MRE 401. However, even when relevant, "[e]vidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion," MRE 404(a), and "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." MRE 404(b)(1). Furthermore, otherwise admissible evidence is rendered inadmissible "if its probative value is substantially outweighed by the danger of unfair prejudice." MRE 403. "Evidence is unfairly prejudicial when there exists a danger that marginally probative evidence will be given undue or preemptive weight by the jury." *People v Crawford*, 458 Mich 376, 398; 582 NW2d 785 (1998).

Evidence of flight is generally admissible to prove consciousness of guilt. *People v Coleman*, 210 Mich App 1, 4-5; 532 NW2d 885 (1995). "Such evidence is probative because it may indicate consciousness of guilt, although evidence of flight itself is insufficient to sustain a conviction." *Id.* at 4. "The term 'flight' has been applied to such actions as fleeing the scene of the crime, leaving the jurisdiction, running from the police, resisting arrest, and attempting to escape custody." *Id.*

Defendant argues that he was unfairly prejudiced by the admission of the evidence regarding the details of his escape because it involved criminal acts separate from those at issue in the trial. Defendant argues that the prosecution should not have been allowed to introduce evidence that he had a gun in his possession at the time of his arrest because the admission of evidence of other criminal activity is strictly limited by MRE 404(b). Additionally, defendant argues that the prosecution should not have been allowed to introduce evidence of the rap lyrics because those lyrics do not describe a specific crime but rather contain general expressions of violence in crude terms, references to drugs, and profanity that run the risk of the jury convicting defendant on the basis of his bad character.

We agree that, had the prosecution offered this evidence to prove defendant's bad character, the evidence would be inadmissible under MRE 404. However, "[e]vidence that is admissible for one purpose is not inadmissible because its use for a different purpose is precluded." *Id*. at 5. When arrested, defendant admitted that he was both fleeing the jurisdiction and running from police. Thus, the prosecution properly sought to prove defendant's consciousness of guilt through evidence of defendant's flight from the jurisdiction. In doing so, the prosecution was entitled to offer as evidence the fact of defendant's flight as well as the details regarding such flight. *Id.* ("testimony regarding the criminal actions accompanying an escape or attempted escape is admissible because those actions are part of the res gestae of the incident.") Therefore, that this evidence would be inadmissible if offered to prove defendants conformity with other bad acts or bad character does not prevent the evidence from being

accepted as proof of consciousness of guilt unless the evidence is unfairly prejudicial to defendant.

We do not believe this evidence unfairly prejudiced defendant. The rap lyrics were highly probative of defendant's consciousness of guilt in this case. At trial, the defendant admitted to writing the following lyrics: (1) "I'm movin' state to state, running house to house," (2) "Losin' my mind . . . ," (3) "Homicide detectives call they self shaking some trees," (4) "Stay with a gun, wanted for a body or two," (5) "still at large, how long can I run . . . before he come back to place that he from," (6) "Take flight when the body stop movin', yeah, I make sure that I do'em, keep twitchin' and I keep shootin.' " These lyrics were found on defendant's person while he was admittedly on the run from police. The lyrics describe, in first person, a protagonist shooting his victim before fleeing the jurisdiction while carrying a gun for protection. The rap lyrics therefore closely connected defendant to the murder of Stanford. There were no apparent inconsistencies between the crimes defendant was charged with committing and the lyrics. Given this high degree of relevance, the fact that the lyrics are violent, laced with profanity, and reference drugs is minimally, if at all, prejudicial to defendant. Defendant testified on his own behalf and stated that the lyrics did not relate to the crimes charged and defendant's counsel argued in closing that the content of the lyrics was characteristic of general "gangster rap" and did not amount to a confession. What the jury chose to believe is not a sufficient basis to find that defendant was unfairly prejudiced by this evidence. *People v Jones*, 115 Mich App 543, 553; 321 N.W.2d 723 (1982) ("It is the jury's task to weigh the evidence and decide which testimony to believe"). Accordingly, we find the trial court did not err in admitting the rap lyrics as evidence.

We also conclude that the trial court's admission of evidence concerning the handgun found in defendant's effects at the time of his arrest was not unfairly prejudicial to defendant. The rap lyrics found on defendant describe a person carrying a gun for protection while fleeing from police. That defendant was found with a hand-gun while admittedly fleeing from police is therefore highly relevant to showing defendant's consciousness of guilt for the charged offense. That defendant had no lawful reason to possess such a weapon, though prejudicial to defendant, also provides context for defendant's return to face trial in Michigan. After defendant was arrested in Illinois for unlawfully possessing the weapon, Illinois police located the active homicide warrant for him in the nationwide database. At that point, defendant indicated that he was aware of the warrant and wished to speak with the officers concerning it. Accordingly, we cannot find that the probative value of this evidence was substantially outweighed by the danger of unfair prejudice. MRE 403.

## II. ASSISTANCE OF COUNSEL

Defendant next argues that he was deprived effective assistance of counsel when his trial counsel failed to object to testimony that officers pulled a booking photograph of defendant from jail files when they were first investigating the case, implying that defendant was previously incarcerated, or when counsel failed to move for a mistrial or a new trial on this basis. Additionally, in defendant's Standard 4 brief, defendant argues that he was denied his right to the effective assistance of counsel when his trial counsel declined to call witnesses who would have allegedly attested to defendant's friendship with Stanford, failed to investigate and present a theory that Nelson might have repressed memories of the alleged crime due to post-traumatic

stress disorder ("PTSD"), and failed to object to the admission of an edited version of a recording of a phone call he made while incarcerated or to move for admission of the entire recording. We disagree.

To preserve a claim of ineffective assistance of counsel, a defendant must request a *Ginther*[5] hearing or move the court for a new trial on this basis. *People v Lopez*, 305 Mich App 686, 693, 854 NW2d 205, 210 (2014), citing to *People v Wilson*, 242 Mich App 350, 352; 619 NW2d 413 (2000). Defendant concedes that he did not preserve this issue for appeal.[6]

"Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). This Court reviews findings of fact for clear error and constitutional issues de novo. *Id.* Absent an evidentiary hearing, this Court's review of an ineffective assistance of counsel claim is limited to the facts in the record, *Wilson*, 242 Mich App at 352, reviewed for mistakes apparent from the record. *People v Henry*, 239 Mich App 140, 146; 607 NW2d 767 (1999).

To establish a claim of ineffective assistance of counsel, "a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden to prove otherwise." *People v Mack*, 265 Mich App 122, 129; 695 NW2d 342 (2005). Thus, "a defendant must overcome the strong presumption that defense counsel's performance was born from a sound trial strategy." *Trakhtenberg*, 493 Mich at 52. "This Court will not substitute its judgment for that of counsel regarding matters of trail strategy, nor will it assess counsel's competence with the benefit of hindsight." *People v Rockey*, 237 Mich App 74, 76-77; 601 NW2d 887 (1999).

As a preliminary matter, defendant has requested this court remand to the trial court for a *Ginther* hearing to further develop his claim that trail counsel was ineffective for failing to object to evidence implying that defendant was previously incarcerated. We find that defendant has failed to establish a basis for such remand. Defendant is only entitled to a *Ginther* hearing if defendant has sufficiently pleaded a claim of ineffective assistance of counsel that cannot be adequately evaluated by this Court on the record available and has potential to be meritorious upon further development of the record. See *Strickland v. Washington*, 466 U.S. 668, 690, 104 S. Ct. 2052, 2066, 80 L. Ed. 2d 674 (1984) (Warning that trial courts must strongly presume effective assistance: "The availability of intrusive post-trial inquiry into attorney performance . . . would encourage the proliferation of ineffectiveness challenges. Criminal trials resolved unfavorably to the defendant would increasingly come to be followed by a second trial, this one of counsel's unsuccessful defense . . . Intensive scrutiny of counsel . . . could dampen the ardor

---

[5] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[6] We note that we denied defendant's motion for a remand to develop this issue. *People v Thompson*, unpublished order of the Court of Appeals, entered August 12, 2015 (Docket No. 325542).

and impair the independence of defense counsel, discourage the acceptance of assigned cases, and undermine the trust between attorney and client."). Here, defendant has failed to provide any showing that further factual development would benefit his claim. Defendant argues that appellate counsel would, on remand, question defendant's trial counsel regarding his decisions not to object to the testimony or request a new trial on this basis. Defendant does not, however, provide any explanation regarding what further facts would be elicited on remand. Additionally, defendant's argument can be resolved based on the record before this Court and further factual development would not render this claim meritorious. Thus, we decline defendant's request to remand for a *Ginther* hearing.

a. Failure to Object

Defendant claims that trial counsel was ineffective for failing to object the admission of evidence implying that the defendant had been previously incarcerated and the admission of an edited version of a phone call defendant made while incarcerated. To establish ineffective assistance on these grounds, defendant must prove that defense counsels failure to object was objectively unreasonable and this failure reasonably affected the outcome of his case. *Trakhtenberg*, 493 Mich at 51. A defense counsel's decision not to object to objectionable testimony may be a matter of trial strategy. *People v Rodgers*, 248 Mich App 702, 715; 645 NW2d 294 (2001).

In this case, after a police officer testified that he retrieved defendant's photograph from prior jail photographs for use in a photo array, defense counsel asked to approach the bench. The trial court, prosecution, and defense counsel then conducted a sidebar before continuing the testimony. Thereafter, the prosecution did not again mention the source of the photograph. It thus appears that defense counsel chose not to object, and rather, to discuss the issue at sidebar, in a strategic effort not to further emphasize the source of the photo to the jury. Had defense counsel chosen to object in the presence of the jury, the trial court would have presumably instructed the jury that it should not consider defendant's prior incarceration when determining his guilt in this case. In so doing, defense counsel would have necessarily reemphasized defendant's prior incarceration. Accordingly, we find counsel's decision not to object was sound trial strategy and deny defendant's claim on this ground.

Nor did defense counsel err in failing to move for a mistrial on this basis. "A mistrial should be granted only for an irregularity that is prejudicial to the rights of the defendant and impairs his ability to get a fair trial." *People v Haywood*, 209 Mich App 217, 228; 530 NW2d 497 (1995) (internal quotation omitted). Here, the very limited testimony implying defendant's prior incarceration did not prejudice defendant's right to a fair trial in light of the other evidence concerning defendant's past. The uncontested testimony, including defendant's own testimony, thoroughly established that defendant regularly sold crack cocaine. The jury knew that defendant had a criminal past, and the brief statement suggesting that defendant had previously been incarcerated, without more, would not have likely changed the jury's perception of defendant. Accordingly, had defense counsel requested a new trial, the trial court would have been required to deny the motion. "It is well established that defense counsel is not ineffective for failing to pursue a futile motion," *People v Brown*, 279 Mich App 116, 142, 755 NW2d 664, 683 (2008), and therefore we hold that defendant's counsel was not ineffective for failing to request a new trial.

We also deny defendant's claim that counsel was ineffective for failing to object to the admission of an edited recording of a phone call defendant made while incarcerated or failing to move for admission of the entire recording. At trial, the prosecution presented evidence that the number defendant called to get in touch with Stanford belonged to a mobile phone that defendant shared with Tiffany Eckles. Eckles had previously told investigators that defendant was the last one who had the phone but at trial testified that it was lost or stolen. Although the subject recording is not part of the record on appeal, the prosecutor's closing argument indicates that the recording was offered as evidence to show that defendant attempted to request that Eckles say that the mobile phone was lost.

Defendant suggests that counsel believed "the recording was barely audible" and that it was "hard to make out what it's saying." Defendant claims that counsel should have objected to the admission of the recording because "the prosecution can mislead the jury." However, defendant has failed to provide any connection between the recording and any misleading statement made by the prosecution to the jury. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Payne*, 285 Mich App 181, 195; 774 NW2d 714, 724 (2009). Accordingly, we find no merit to defendant's argument.

Defendant argues alternatively that counsel should have requested that the whole recording be played pursuant to MRE 106. Under MRE 106, "[w]hen a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it." Defendant argues that playing the whole recording would have shown that he believed that the police and witnesses were lying in order to have him arrested and convicted of the charged crimes. However, the record on appeal does not establish that the recording would have made this point. Even if it would have, if the recording was barely audible the decision not to present it would not have fallen below an objective standard of reasonableness, *Trakhtenberg*, 493 Mich at 51, given that defendant testified extensively on the subject at trial. Because defendant cannot show that the editing of the recording affected the outcome of his trial, we reject this claim.

### b. Failure to Present Evidence

Defendant claims that trial counsel was ineffective for failing to call witnesses to testify to defendant's friendship with Stanford and failing to present a theory that Nelson might have repressed memories of the alleged crime due to post-traumatic stress disorder ("PTSD"). The decision to call or question witnesses is presumed to be a matter of trial strategy, and the failure to call or question a witness constitutes ineffective assistance of counsel only when it deprives the defendant of a substantial defense that might have made a difference in the outcome of the trial. *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004).

First, defendant has failed to provide any documentary support for his assertions that the proposed witnesses would have testified that he was, in fact, friends with Stanford or that a psychiatrist's testimony would have undermined Nelson's testimony because she suffered from PTSD. Absent such support, defendant has failed to meet his burden of establishing a factual

predicate for this claim, and he cannot establish that the purported testimony would have supported his case such that he was deprived of a substantial defense. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999) (holding "defendant has burden of establishing the factual predicate for his claim of ineffective assistance of counsel"); *People v Carbin*, 463 Mich 590, 601; 623 NW2d 884 (2001) (rejecting defendant's claim of ineffective assistance when based solely on the bare assertion that counsel was deficient because she failed to call witnesses to testify at trial). Thus, defendant has not met his burden to establish deficient performance and prejudice.

Second, defendant has failed to show that such testimony, even if available, would have affected the outcome of his case, *Trakhtenberg*, 493 Mich at 51, as defendant otherwise presented these theories at trial. Defendant testified that he and Stanford had a good "personal and business relationship." Defendant's alleged witnesses, therefore, would have merely bolstered defendant's testimony regarding his relationship with Stanford. See *Dixon*, 263 Mich App at 398. Additionally, defendant had the opportunity to test Nelson's memory on cross-examination. Defense counsel did so at length, and pointed out inconsistencies with Nelson's prior statements. Thus, defendant was not deprived of the chance to undermine Nelson's testimony. As defendant's argument "was actually raised, defendant's contention [of ineffective assistance of counsel] is without merit." *Id.* That the jury rejected defendant's claims after he had an opportunity to present them is not grounds to set aside his convictions. See supra *Jones*, 115 Mich App at 553.

## III. SUFFICIENCY OF THE EVIDENCE

In his third claim of error, defendant argues that the prosecution failed to offer sufficient evidence on the element of premeditation to support his conviction of first-degree murder. We disagree.

In deciding whether the evidence was sufficient to support a conviction, this Court must determine whether the evidence, viewed in a light most favorable to the prosecution, would warrant a rational jury to find the essential element of the crime proven beyond a reasonable doubt. *People v Nowack*, 462 Mich 392, 399-400; 614 NW2d 78 (2000). "The standard of review is deferential: a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *Id.* at 400. The prosecution "need not negate every reasonable theory consistent with innocence [and] need only convince the jury of guilt in the face of the contradictory evidence the defendant may provide." *Id*.

The prosecution presented sufficient evidence to support defendant's conviction of first-degree, premeditated murder. In proving defendant's guilt under MCL 750.316(1)(a), the prosecution bears the burden to establish the element of premeditation by evidence that there existed some time span between the formation of the initial intent to kill and the ultimate murder long enough that it would afford a reasonable person time to take a "second look" before committing the murder. *People v Gonzalez*, 468 Mich 636, 641; 664 NW2d 159 (2003). In the instant case, while defendant spoke on the phone with Stanford, defendant repeatedly asked Stanford who was with him. Additionally, defendant changed the meeting place while on the phone with Stanford and defendant's attack was not provoked; rather, defendant surprised his victims during the midst of a seemingly peaceful conversation. This testimony allowed the jury

to infer that defendant had planned the attack in advance, assessing the particulars of the act he later intended to commit and luring his victims to a location he found more suitable.

Defendant argues that he would not have lured Stanford to the site of the crime had he planned to commit the murder in advance because the sight was open, public, and populated. However, this argument was properly presented at trial and rejected when the jury found defendant guilty of premeditated murder. *Nowack*, 462 Mich at 400. As defendant had contacts in the area and may have chosen the location for that reason, we cannot say that the jury's rejection of defense's argument was unreasonable. Though the prosecution used defendant's theft of Dorian Griffin's birth certificate to prove premeditation even though the birth certificate was issued after the murder took place, defense counsel argued this discrepancy to the jury, correcting what appears to have been an inadvertent mistake by the prosecution. Assessing the evidence as a whole, we find sufficient evidence to support a rational jury's finding beyond a reasonable doubt that defendant premeditated the murder and affirm defendant's conviction.

## IV. PROSECUTORIAL MISCONDUCT

Defendant's final argument, raised in his Standard 4 brief, is that the prosecution committed misconduct by making three statements in closing arguments that defendant claims either imply a special knowledge of the truth of witness testimony or imply that defendant had confessed to the murder. We disagree.

As defendant did not object to these statements at trial, his claims are unpreserved. *People v Thomas*, 260 Mich App 450, 453-54, 678 NW2d 631, 635 (2004). This Court reviews unpreserved claims of prosecutorial misconduct for plain error affecting defendant's substantial rights. *People v Goodwin*, 257 Mich App 425, 431; 668 NW2d 392 (2003). Under plain error review, "the defendant must demonstrate that: (1) an error occurred, (2) the error was plain, i.e., clear or obvious, and (3) the plain error affected the defendant's substantial rights." *People v McLaughlin*, 258 Mich App 635, 645; 672 NW2d 860 (2003). To show the plain error affecting the defendant's substantial rights, the defendant must prove prejudice resulted from the error, "meaning that the error must have affected the outcome of the lower court proceedings." *Id.*

"[P]rosecutors are accorded great latitude regarding their arguments and conduct." *People v Bahoda*, 448 Mich 261, 282; 531 NW2d 659 (1995) (quotations omitted). In arguing that a witness is worthy or not worthy of belief, a prosecutor may "argue the evidence and all reasonable inferences from the evidence as it relates to their theory of the case." *Id.* (quotations omitted); *People v Christel*, 449 Mich 578, 599-600; 537 NW2d 194 (1995). A prosecutor may not imply that he or she has some special knowledge that a witness's testimony is truthful. *People v Dobek*, 274 Mich App 58, 66; 732 NW2d 546 (2007). However, a prosecutor may argue from the facts that a witness is credible. *Id.*

a. *"[H]e lies when it's convenient for him to lie."*

Defendant first argues that the prosecutor committed misconduct when he told the jury that defendant "lies when it's convenient for him to lie." Taken in context, the prosecution argued:

Defendant intended to kill the person assaulted. What was the mind set? I have to take out the surviving witness, that was the mind set. That person that he was talking about in the car, Shayla [Nelson], I've got to kill her so that I can get away with this crime. He's been trying to get away for a long time, and he lies when it's convenient for him to lie.

The whole thing about the 40 semiautomatic handgun when I bought it from this guy in Arizona, Mesa, Arizona, and bought if for $350 and right up to the point that the police confronted him with the evidence, oh, man, this gun was stolen out of Saginaw. Oh, yeah, I lied. It's convenient.

It's convenient to lie about your name as long as the police don't know who you are, but then when the police say, well, I don't believe you, okay, we're going to fingerprint you, we're going to do all the things we need to do to identify you. Man, that's not my name. My name is Markest Thompson. So you corner him, he'll tell you the truth.

Well, he's cornered today. Okay? He's cornered with the evidence. He's cornered by the physical evidence. He's cornered with testimony from witnesses and he's cornered with his own statements about committing this homicide. Assault with intent to murder [Nelson], we can cross that one off, guilty.

Defendant admitted to lying numerous times throughout the trial. He admitted that he used another person's birth certificate, bank statements, and credit cards to elude police for about 18 months. He admitted to lying to police about his identity at the time of his arrest, and he admitted to changing parts of his story when confronted by police evidence. The prosecution did not mischaracterize the evidence nor imply a special knowledge that defendant was testifying untruthfully. The prosecution merely argued the evidence and the reasonable inferences there from. Therefore, we find that the prosecution's statement does not constitute prosecutorial misconduct.

b. *"Because she's telling you the truth."*

Defendant next argues that the prosecution committed misconduct when it told the jury that Ms. Nelson had testified truthfully. Taken in context, the prosecutor argued:

What motive would Shayla Nelson have to say it was the defendant who shot Mitchell Stanford? It was the defendant who shot me, because if it's not Mitchell Stanford [sic], then the real killer's still on the loose. Why would she say that? Because she's telling you the truth.

Here, the prosecution did not imply special knowledge in the truth of Nelson's statement but rather argued that Nelson had a motive to tell the truth: to seek justice for her friend, Stanford, as well as herself, and to assure that the person who shot them was not still at large. The prosecution's statement that Ms. Nelson was telling the truth is a reasonable inference argued from this evidence. In the context of this hypothetical question-and-answer, the statement did not constitute prosecutorial misconduct.

-10-

c. *"[H]e's cornered with his own statements about committing this homicide"*

Finally, defendant argues that the prosecution committed misconduct when it argued to the jury that defendant was "cornered with his own statements about committing this homicide." Taken in context, the prosecutor stated:

> Well, he's cornered today. Okay? He's cornered with the evidence. He's cornered by the physical evidence. He's cornered with testimony from witnesses and he's cornered with his own statements about committing this homicide. Assault with intent to murder [Nelson], we can cross that one off, guilty.

Contrary to defendant's argument, the prosecution did not imply that defendant had confessed to the crime outside of the presence of the jury. Rather, the prosecution properly argued to the jury that defendant's own statements made at trial and in the rap lyrics found on him at the time of his arrest implicated him in the murder. The prosecution did not mischaracterize the evidence nor imply a special knowledge that defendant was testifying untruthfully and, therefore, we reject defendant's final claim of prosecutorial misconduct.

For the foregoing reasons, we affirm defendant's convictions.

/s/ David H. Sawyer
/s/ William B. Murphy
/s/ Amy Ronayne Krause